UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PERRY A. FRANKEL, M.D. AND ADVANCED
CARDIOVASCULAR DIAGNOSTICS, PLLC,

                                    **CASE NO. 18-CV-6378-ER-BCM**

                 PLAINTIFFS

-AGAINST-                              **VERIFIED AMENDED**
                                         **COMPLAINT**

U.S. HEALTHCARE, INC. d/b/a AETNA
U.S. HEALTHCARE, AETNA, INC. AND AETNA, INC.,

                 DEFENDANTS
-------------------------------------------------------------------X

       Plaintiffs, Perry A. Frankel, M.D. and Advanced Cardiovascular Diagnostics, PLLC, by

way of Complaint against the Defendants, allege the following:

## NATURE OF ACTION

       1.     This is an action by Perry A. Frankel, M.D. ("Dr. Frankel") and Advanced

Cardiovascular Diagnostics, PLLC ("ACD") ("Plaintiff") against an insurance company and

organization, U.S. Healthcare, Inc. d/b/a Aetna U.S. Healthcare and Aetna, Inc. d/b/a Aetna

(collectively referred to as "Defendants") for Breach of contract, breach of implied covenant of

good faith and fair dealing by among other things (1) seeking to terminate the contract without

explanation, (2) refusing to pay claims for Covered Services without explanation, (3) imposing

policies upon the Plaintiff that are in contradiction to the requirements imposed upon the Plaintiff

under the Contract; and (4) Defendants' refusal to allow Plaintiff to provide services to Members

through the Mobile Clinics along with Defendants' refusal to pay Plaintiff for Covered Services

provided to Members through the Mobile Clinics is an effort by the Defendants to reduce

Member access to Covered Services; (5) violation of the New York Unfair Trade Practices Act

as set forth under New York General Business Law § 349, by failing to pay claims for services

provided to its members, using deception to entice medical providers, including the Plaintiff, into

provided to its members, using deception to entice medical providers, including the Plaintiff, into entering into contracts to provide services to members of Defendants' health care plans, reducing consumer access to healthcare, and by restricting its providers ability to provide treatment and services that are in the best interest of the members of Defendants' health care plans; violation of the Patient Protection and Affordable Care Act, 42 U.S.C. § 80001, et seq. and New York Public Health Law § 4406(1); tortious act of interference with a contract; violation of New York Insurance Law § 3224-a, known as the Prompt Payment Law, requires an insurer to pay undisputed claims within thirty (30) days of receipt of electronic claims; violation of New York Public Health Law § 4406-(d)(2)(a) and 4406-(d)(2)(d), by terminating the Contract with Plaintiffs without reason or explanation; violation of New York Insurance Law § 4803(b)(1) by terminating the Contract with Plaintiffs without reason or explanation; violation of New York Public Health Law § 4406-d(5); and a temporary restraining order staying Defendants' termination of Plaintiffs' contract.

## THE PARTIES

2. Dr. Frankel is a New York State licensed physician and is Board Certified in Internal Medicine and Board Eligible in Cardiology, with medical staff privileges at North Shore University Hospital in Manhasset, New York; St. Francis Hospital in Port Washington, New York; and Lenox Hill Hospital in New York, New York. Dr. Frankel is a resident of the State of New York.

3. Dr. Frankel's medical practice, Advanced Cardiovascular Diagnostics ("ACD"), is a New York Corporation, that provides state-of-the-art cardiovascular testing and cardiovascular disease prevention services in both a traditional office setting in Lake Success,

New York; Bronx, New York; Brooklyn, New York, as well as in two (2) fully-equipped mobile medical offices ("Mobile Clinics").

4.      Defendants, Aetna, Inc. d/b/a Aetna are Connecticut Corporations that provide various insurance products, including health insurance.  Aetna's corporate headquarters is located at 151 Farmington Avenue, Hartford, CT 06156. Defendant, U.S. Healthcare, Inc. d/b/a Aetna U.S. Healthcare ("U.S. Healthcare") is a subsidiary of Aetna and is incorporated in the State of New York. Aetna, Inc., Aetna, and U.S. Healthcare, Inc. (hereinafter, referred to collectively as "Defendants"). Based on papers filed with the Court by the Defendants that Aetna Life Insurance Company is the proper party to be named as a Defendant in this action, Plaintiffs request that the Court allow Plaintiffs to substitute or add Aetna Life Insurance Company as a Defendant in the above action and that the caption be amended to reflect same. Defendant, Aetna Life Insurance Company is a Connecticut Corporation.

## JURISDICTION AND VENUE

5.      This action arises from a Contract governed by New York law for services provided in New York.  Plaintiffs are New York Corporations and Defendants conduct business throughout the State of New York.

6.      Venue is proper in this Court because both the Plaintiffs and the Defendants conduct business in New York County

## FACTS

7.      On or about April 22, 1998, Dr. Frankel executed a Specialist Physician Agreement Execution Sheet (the "Contract") with Aetna[1].

8.      Dr. Frankel has adhered to the terms of the Contract at all times.

---

[1] Under the terms of the Contract, Defendants are referred to and identified as ("Company").

9.     Pursuant to the terms of the Contract, Plaintiff agreed to provide health care services to enrollees, members, and beneficiaries ("Members") of Aetna's health care plans in exchange for payment at an agreed upon contractual rate.  (Annexed hereto as **Exhibit "A"** is a copy of the Contract).

10.     Plaintiff provides health care services to Members employed by, unions, government agencies, churches, and charitable organizations.

11.     The Mobile Clinic is highly effective in providing access to life saving preventative health care to union workers who often work overnight shifts and long shifts that include double and triple shifts throughout the New York City area that vastly differ from the majority of the working population.

12.     Plaintiff's practice includes both physical medical locations and two (2) state of the art mobile medical clinics (the "Mobile Clinics"). The Mobile Clinics are used to bring lifesaving medical services out into the community, at locations which are more convenient for certain patients, and patient groups, to receive needed care. Additionally, the Mobile Clinics allow Members to receive preventative care that improves Members overall health and reduces the need for Members to incur for future costly medical procedures related to strokes, heart attacks, and other serious medical conditions.

13.     Additionally, the Mobile Clinics provide vital preventative healthcare to Members in underserved urban populations in the New York City area that otherwise lack access to quality healthcare services

14.     The Mobile Clinics are necessary in order to ensure that Plaintiffs' patients, including members of Aetna health insurance plans have access to medical and preventative health care as required under the Contract.

4

15.     The Mobile Clinic is highly effective in providing health care access to union

workers throughout the New York City area, who work long shifts, with hours that differ from

the majority of the working population. The Mobile Clinics brings healthcare to Members in

underserved urban populations in the New York City area who would not otherwise have access

to quality healthcare services.

16.     The quality of care provided to patients covered under the Contract, is well

documented in Plaintiffs' appeal of Aetna's non-renewal determination. Plaintiffs' appeal

contains letters of recommendation from Helena M. Smith, Warden at the New York City

Department of Correction; Troy A. Hardy, a captain in the NYC Department of Corrections;

Rev. Dom Elias Carr, Pastor of Church of Saint Rocco; and Dom Gabriel Rach, Pastor at St.

Patrick Church. Additionally, Plaintiffs' Appeal of the Non-Renewal Determination contained

letters from various unions covered by Aetna healthcare plans and the Contract, indicating that

ACD was invited by the unions to bring the Mobile Clinic on-sight and evaluate and treat the

union members.  (Annexed hereto as **Exhibit "B"** are copies of Recommendation Letters and

letters from Subway-Surface Supervisors Association; Transport Workers Union, Local 100; and

the Transport Workers Union, Local 106 in support of Plaintiff's Mobile).

## RELEVANT TERMS AND DEFINITIONS UNDER THE CONTRACT

17.     Section 1.2 Non-Discrimination.

> Provider shall accept and treat as patients all Members without
> regard to the health status or health care needs of such Members
> and shall protect the rights of such Members as patients. Provider
> shall not differentiate or discriminate in the treatment or the access
> to treatment, of Members on the basis of race, gender, creed,
> ancestry, lawful occupation, age, religion, marital status, sexual
> orientation, mental or physical disability, color, national origin,
> place of residence, health status, source of payment for services,
> cost or extent of Covered Services required, status as Members, or
> any other grounds prohibited by law or this agreement.  Provider

shall provide Covered Services to Members: (a) in no less than the
same manner and in accordance with at least the same standards as
offered to Provider's other patients; and (b) in accordance with at
least the same standard of practice, care, skill, and diligence
customarily used by similarly situated physicians at the time at
which such services are rendered. Provider shall not provide or
threaten to provide inferior care or imply to Members that their
care or access to care will be inferior due to the source of payment.

(See, Exhibit A, Section 1.2 Non-Discrimination).

18.     Section 9.1 Independent Contractor Status, provides, in relevant part:

. . . Provider acknowledges that all patient care and related
decisions are the sole responsibility of Provider and that
Company's medical management procedures, protocols, and
policies do not dictate or control Provider's clinical decisions with
respect to the medical care or treatment of Members. . .

(See Exhibit A, Section 9.1 Independent Contractor Status).

19.     Section 12.4 Covered Services. "Those Medically Necessary Services, which a

Member is entitled to receive under the terms and conditions of a Plan." (See Exhibit A, Section

12.4 Covered Services).

20.     Section 12.6 Emergency Services. "Emergency Services shall mean, unless

otherwise defined in the applicable Plan, Medically Necessary Services to preserve life or

stabilize health, available on an inpatient or outpatient basis, twenty-four (24) hours per day,

seven (7) days per week." (See Exhibit A, Section 12.6 Emergency Services).

21.     Section 12.7 Medically Necessary Services.

Medically Necessary Services shall mean, unless otherwise defined
in the applicable plan, health care services that are appropriate and
consistent with the diagnosis in accordance with accepted medical
standards and which are likely to result in demonstrable medical
benefit, and which are the least costly of alternative supplies or
levels of service which can be safely and effectively provided to
the patient.  Medically Necessary Services must be related to
diagnosis or treatment of existing illness or injury, except for
preventative and well-baby care. . .

6

(See Exhibit A, Section 12.7, Medically Necessary Services).

22.      On May 4, 2017, via email, Aetna's Network Account Manager for the Metro New York Market, Mr. Robert Finch, advised Plaintiff's billing manager that Aetna had determined that Plaintiff's Mobile Clinics will not be allowed to render services to any of Aetna's members.

23.      On June 16, 2017, Plaintiff responded, via letter, to Defendants' decision to prohibit Plaintiff from using the Mobile Clinics to provide vital, life-saving preventative health care to Members, in good faith, in effort to resolve any and all issues raised by Defendants with respect to Plaintiff's use of the Mobile Clinics.  Plaintiff also, submitted multiple letters from Union leaders in support of Plaintiffs' continued use of the Mobile Clinics.

24.      On June 19, 2017, in retaliation to Plaintiff's June 16, 2017 letter, Defendants initiated a prepayment audit review of all claims submitted by ACD for Mobile Unit Services.  In addition to the review, Defendants halted payment to ACD for services previously performed by ACD.  At this time, Defendant owes Plaintiffs in excess of nine-hundred thousand dollars ($900,000.00) for services provided.

25.      On September 25, 2017, Defendants issued a retaliatory Non-Renewal Notice indicating that Defendants would not renew Plaintiff's Aetna contract, including non-renewal of Plaintiff's participation in the Medicare networks.

26.      On February 16, 2018, Plaintiff submitted an appeal of Aetna's decision, which Aetna subsequently denied without reason or explanation other than that the non-renewal was a result of "**Aetna rationalizing its network**". [Emphasis Added].

27.      Pursuant to Aetna's Non-Renewal Notice, Aetna intends to terminate its contract with Plaintiff on or about July 31, 2018.

28.     Pursuant to Aetna's Non-Renewal Notice, Aetna intends to mail notice of termination to its members on June 25, 2018.

29.     Termination of the Contract by the Defendant and the mailing of notice of non-renewal to Plaintiffs' clients, would cause Plaintiffs to suffer irreparable harm with catastrophic financial consequences.

30.     Aetna seeks to terminate Plaintiff as an Aetna healthcare provider for reasons that remain unknown. In doing so Aetna, without any due process or reason, is not only depriving Plaintiff and his numerous staff members of their livelihood, but Aetna, through its actions is also compromising the health and well-being of Aetna plan members, including local New York City Transportation Unions, religious organizations, and city workers, as well as, underserved populations who do not have regular access to quality healthcare clinics.

31.     Furthermore, Aetna's actions compromise the health and safety of the New York City Transportation workers but also the millions of New Yorkers who use New York public transportation every day (daily ridership is approximately 5,655,755 people on an average weekday) *See* http://web.mta.info/nyct/facts/ridership/ (Retrieved April 30, 2018).

32.     Aetna's reckless disregard for the interest, safety, health, and well-being of its members is not only demonstrated by its actions set forth in this complaint, but has also been demonstrated by other recent widely reported events involving Aetna, including the deposition of Dr. Jay Ken Linuma (Dr. Linuma) Aetna's medical director for Southern California, taken in a California lawsuit in which, Dr. Linuma, states that "during the entire course of time he was employed at Aetna, he never once looked at patients' medical records himself". Not to be outdone, Aetna also recently settled a class action against it stemming from Aetna's inadvertent

8

disclosure of the HIV status of a number of individuals who are, or were, covered under Aetna plans.

33.     The events set forth in paragraph 31 are set forth to demonstrate Aetna's pattern of disregard for policies and procedures. Upon information believe, the actions of Aetna set forth in Paragraph 29, constitute only a small portion of the violations and alleged misconduct on the part of Aetna over the years.

## AS AND FOR THE FIRST CAUSE OF ACTION

34.     Paragraphs 1- 33 are restated and realleged with the same force and effect as if fully stated and alleged herein.

35.     Plaintiff has been a participating Aetna health care provider under the Contract, since 1998, during which time Plaintiff has maintained a flawless record.

36.     Under the Contract between Defendant and the Plaintiff, Plaintiff agreed to provide health care services to enrollees, members, and beneficiaries of Aetna's health care plans in exchange for payment at a contractual rate. The contractual rate of services is less than the rate charged for the same services to patients who are not covered by Aetna.

37.     The Contract imposes upon the parties an implied covenant of good faith and fair dealing.

38.     The medical services provided by Plaintiff to Members through use of the Mobile Clinic are "Covered Services" as defined under the Contract.

39.     Section 1.2 of the Contract requires Plaintiff to "provide Covered Services to Members: (a) in no less than the same manner and in accordance with at least the same standards as offered to Provider's other patients; and (b) in accordance with at least the same standard of practice, care, skill, and diligence customarily used by similarly situated physicians at the time at

which such services are rendered. Provider shall not provide or threaten to provide inferior care or imply to Members that their care or access to care will be inferior due to the source of payment." (See Exhibit A, Section 1.2, Non-Discrimination).

40.     Plaintiff currently provides health care services through use of the Mobile Clinics, to Members as well as other non-member patients.

41.     Defendant refuses to pay Plaintiff for services provided to Members through use of the Mobile Clinics.

42.     Defendant advised Plaintiff that Plaintiff is not allowed to use the Mobile Clinics to provide services to Members. However, because Plaintiff provides health care services through use of the mobile clinic to non-members, the Non-Discrimination requirements set forth in Section 1.2 of the Contract require that Plaintiff offer health care services through the Mobile Clinic to Members as well.

43.     Due to the makeup of the members that Plaintiffs serve, and at the request of certain Union Groups covered by Aetna plans, Plaintiff provides Members with access to the Mobile Clinics at work sites and other locations that are convenient to the Members.

44.     Defendant's actions have been carried out in bad faith and in direct violation of the Contract.

45.     Defendant's actions are designed to force Plaintiff to restrict Member access to Covered Services and have resulted in harm not only to the Plaintiff but to Members as well.

46.     Defendant has not provided Plaintiff with any justification for non-renewal and termination of the contract. Likewise, Defendant has withheld payment to the Plaintiffs for services rendered to Defendants members, resulting in unpaid bills in excess of nine-hundred

thousand dollars ($900,000.00).  (Annexed hereto as **Exhibit "C"** is a Summary of Unpaid Claims owed by Defendants to Plaintiff).

47.    The Defendant has breached the implied covenant of good faith and fair dealing by among other things (1) seeking to terminate the contract without explanation, (2) refusing to pay claims for Covered Services without explanation, (3) imposing policies upon the Plaintiff that are in contradiction to the requirements imposed upon the Plaintiff under the Contract; and (4) Defendant's refusal to allow Plaintiff to provide services to Members through the Mobile Clinics along with Defendant's refusal to pay Plaintiff for Covered Services provided to Members through the Mobile Clinics is an effort by the Defendant to reduce Member access to Covered Services.

48.    The Defendant's bad faith conduct has interfered with the intent and purpose of the Contract and has caused damages to the Plaintiff in the amount of $900,000.00.

### AS AND FOR THE SECOND CAUSE OF ACTION

49.    Paragraphs 1-48 are restated and realleged with the same force and effect as if fully stated and alleged herein.

50.    Defendants have violated, and remain in violation of the New York Unfair Trade Practices Act as set forth under New York General Business Law § 349, by failing to pay claims for services provided to its members, using deception to entice medical providers, including the Plaintiff, into entering into contracts to provide services to members of Defendants' health care plans, reducing consumer access to healthcare, and by restricting its providers ability to provide treatment and services that are in the best interest of the members of Defendants' health care plans.

51.     Upon information and belief, Defendant marketed its insurance plans and products to consumers in the State of New York with the promise of providing members insurance coverage that would cover healthcare services at a wide network of healthcare providers. Defendant also marketed plans to consumers, including unions and union members, with the implied promise of access to health care coverage. Thereafter, Defendant reduced its members access to healthcare services by restricting Plaintiff from operating its Mobile Clinics and reducing its network of providers overall.

52.     Defendants actions have harmed the Plaintiff by enticing Plaintiff to provide healthcare services to members of its insurance plans, without providing payment on its members claims as required. Furthermore, Defendant enticed Plaintiff and other providers to enter into contracts to provide healthcare to Defendants members at a reduced "contract rate" based on the implied understanding that Defendants would make payments for services provided to its members.

## AS AND FOR THE THIRD CAUSE OF ACTION

53.     Paragraphs 1-52 are restated and realleged with the same force and effect as if fully stated and alleged herein. Aetna is in breach of the Contract and applicable law governing the Contract, as a result of Aetna's unilateral determination to stop paying claims to the Plaintiffs for services provided to Aetna members in accordance with the terms of the Contract, those claims are now in excess of $900,000.00. Additionally, Aetna is in breach of Contract by unilaterally determining that Aetna would refuse to pay claims on services provided to Aetna Members at Plaintiffs' Mobile Clinics, despite the fact that Section 9.1 of the Contract specifically provides that "all patient care and related decisions are the sole responsibility of the provider and that Company's medical management procedures, protocols, and policies do not

12

dictate or control Provider's clinical decisions with respect to medical care or treatment of Members."

54.     Defendants' actions set forth in paragraph 52 above have resulted not only in breach of the terms of the Contract but have also resulted in constructive termination of the contract without following the rules, policies, and procedures for termination set forth in the Contract and under applicable New York State law.

## AS AND FOR THE FOURTH CAUSE OF ACTION

55.     Paragraphs 1- 54 are restated and realleged with the same force and effect as if fully stated and alleged herein.

56.     Plaintiffs' fifth cause of action arises under the Patient Protection and Affordable Care Act, 42 U.S.C. § 80001, et seq. (the "PPACA") and New York Public Health Law § 4406(1).

57.     The PPACA prevents insurance companies from refusing to provide insurance coverage to individuals and from terminating insurance coverage. See *42 U.S.C. § 300-gg-42.* New York Public Health Law § 4406(1) incorporates the requirements of 42 U.S.C. § 300-gg-41(b)

58.     The PPACA also requires that insurance plans provide certain health benefits, including among other things, preventative care. *See 42 U.S.C. § 18022(b)(1).*

59.     Upon information and belief, because Defendants are prevented from terminating coverage, or restricting coverage of certain services, Defendants have taken actions, such as issuing blanket denials on claims, and prohibiting Plaintiffs from providing Covered Services,

for the purpose of shrinking the provider network, and to restrict patient access to Covered Services.

60.     Such actions by the Defendant, violate the mandatory coverage requirements set forth under PPACA, and also constitute a breach of the Contract. As such Defendants should be enjoined from (A) terminating the Contract; and (B) from further directing Plaintiff to restrict patient access to Covered Services.

## AS AND FOR THE FIFTH CAUSE OF ACTION

61.     Paragraphs 1-60 are restated and realleged with the same force and effect as if fully stated above.

62.     Plaintiff agreed to provide services to Defendant's Members based upon Defendant's contractual promise to pay Plaintiff at the agreed upon contract rate for services provided.

63.     Plaintiff provided Members with Covered Services and properly billed for the services provided.

64.     Defendants refuse to pay Plaintiff for Covered Services provided to Defendants' Members.

65.     Plaintiff relied upon Defendants' promise to its detriment by devoting resources, time, and money towards providing medical care to Members.

66.     Defendants' refusal to pay Plaintiff for services provided, has resulted in Plaintiff incurring damages in excess of nine-hundred thousand dollars ($900,000.00).

## AS AND FOR THE SIXTH CAUSE OF ACTION

67.     Paragraphs 1- 66 are restated and realleged with the same force and effect as if fully stated above.

68.     Plaintiffs have provided medical services in excess of $900,000.00 to Members with the belief that those healthcare services constituted Covered Services under the Contract and with the expectation that those services would be paid for by the Defendant at the agreed upon contract rate.

69.     Defendants have refused to pay, and owe, Plaintiffs over $900,000.00 for services provided to its Members by Plaintiffs.

70.     Defendants received the benefit of marketing, selling, and receiving money related to sale of insurance policies that include Plaintiffs as a covered healthcare provider. Plaintiffs' services, including in particular the option of utilization of the Plaintiffs' Mobile Clinics, incentivized customers, including large transportation unions, to purchase or re-purchase insurance policies from the Defendant.

71.     Defendants have therefore unjustly enriched themselves by receiving the benefit of marketing and selling insurance plans that included Plaintiffs' services without compensating Plaintiffs for the services provided.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

72.     Paragraphs 1- 71 are restated and realleged with the same force and effect as if fully stated above.

73.     Plaintiffs' seventh cause of action arises under the tortious act of interference with a contract.

74.     In New York State, the elements for an action for interference with a contract are the following: (1) the existence of a valid contract between plaintiff and a third party; (2) the

15

defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages.

75.     Plaintiffs provide medical services in accordance with the terms of the Contract since 1998. Plaintiffs provide Aetna Members with Covered Services under which, Aetna Members agree to pay a co-pay based on the representation by Aetna that Covered Services provided by an in-network provider will be covered under the Aetna plan. Upon treatment from a healthcare professional, patients create an implied contract between themselves and the medical provider.

76.     Defendants has all time relevant, been aware of Plaintiffs' services and contracts with Members of Defendants' insurance plans.

77.     On September 25, 2017, Defendant issued a retaliatory Non-Renewal Notice indicating that Aetna would not renew Plaintiffs' Aetna contract, including non-renewal of Plaintiff's participation in the Medicare networks, resulting in Defendant intentionally procuring the breach of the contracts between Plaintiffs' medical patients (Aetna members) and Plaintiffs.

78.     Defendants' interference with Plaintiffs' contract between himself and Member patients resulted in Plaintiff incurring actual damages by way of non-payments for services provided to Members of Defendants' plans, resources delegated to providing services to Members, and time, money, and effort spent in anticipation of renewal of the Contract, and loss of future profits.

## AS AND FOR THE EIGTH CAUSE OF ACTION

79.     Paragraphs 1-78 are restated and realleged with the same force and effect as if fully stated above.

80.     New York Insurance Law § 3224-a, known as the Prompt Payment Law, requires an insurer to pay undisputed claims within thirty (30) days of receipt of electronic claims.

81.     Where a claim is disputed, the insurer must notify the health care provider within thirty (30) days of the specific reasons for the denial, or request within that time period, further information. Upon receipt of the information requested, the insurer must comply with the thirty (30) day period.

82.     The Prompt Payment Law provides for a private right of action. Violations are subject to liquidated damages, composed of full payment of the claim plus interest.

83.     Defendants violated Section 3224-a by failing to deny the claim or request information within the initial thirty (30) day period, or failed to properly deny, or require specific additional information and specify why it was necessary during the initial period.

84.     Due to its violations of Section 3224-a, Defendants are liable to Plaintiffs in an amount to be determined by the Court after trial, but at least in the amount of $900,000.00, together with interest thereon at 12% per annum from the dates that the claims were made.

## AS AND FOR THE NINTH CAUSE OF ACTION

85.     Paragraphs 1-84 are restated and realleged with the same force and effect as if fully stated above.

86.     Defendants violated New York Public Health Law § 4406-(d)(2)(a) and 4406-(d)(2)(d), by terminating the Contract with Plaintiffs without reason or explanation.

87.     Additionally, Defendants have violated New York Insurance Law § 4803(b)(1) by terminating the Contract with Plaintiffs without reason or explanation.

88.     Upon information and belief, Defendants are seeking to terminate the Contract as a result of services provided through the Plaintiffs Mobile Clinics and as a result of the fact that

the Plaintiffs advocated for use of the Mobile Clinics on behalf of patients, any such termination

violates New York Public Health Law § 4406-d (5).

89.    In light of the above violations, the Court should enjoin the Defendants from

terminating, or failing to renew the Contract. Termination or non-renewal would result in

immediate and irrevocable harm to the Plaintiff in the way of the loss of future profits relating to

the existing Contract.

## AS AND FOR THE TENTH CAUSE OF ACTION

90.    Paragraphs 1-89 are restated and realleged with the same force and effect as if

fully stated above.

91.    The Affordable Care Act, 42 U.S.C. § 18116(a); 45 C.F.R. § 92.101(a) prohibits

exclusion from participation in, denial of benefits of, or subjection to discrimination under, *inter

alia*, any health program or activity that receives Federal financial assistance when the action is

taken based on grounds prohibited by, *inter alia*, the Civil Rights Act of 1964.

92.    The Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits discrimination on the

basis of race, color, or national origin.

93.    Insurers that receive federal funds are prohibited from distinguishing among

individuals on the basis of race, color or national origin, either directly or indirectly, in the types,

quantity, quality or timeliness of program services, aids or benefits that they provide or the manner

in which they provide them.

94. Upon information and belief Defendants receive federal funds, receive federal financial

Assistance, and participate in federal programs.

95. Defendants have excluded the Plaintiffs from participation in the Aetna health

Program by failing to renew their contract without cause. Defendants terminated Plaintiffs contract as a result of Plaintiffs' use of mobile clinics, which Dr. Frankel uses to provide patients in urban areas with access to healthcare that would not otherwise be available. The services provided by Plaintiffs to Aetna patients through use of the mobile clinics are covered services as defined under the Contract. Upon information and belief, in order to get around restrictions that prohibit Defendants from denying patients based on medical risk and/or terminating health insurance coverage to patients, the Defendants have instead decided to restrict patient access to healthcare. Defendants' termination of its contract with the Plaintiff was done as part of this broader policy by the Defendants to restrict patient access to medical care.

96. Plaintiffs mobile clinics provide healthcare services that detect and prevent cardiovascular disease and strokes. It is a medical fact that minorities are at a much higher risk of suffering from stroke, heart attacks, and other cardiovascular disease. Many of the Aetna members that the Plaintiffs provide care for are members of minority groups of race, color, or national original who lack adequate access to healthcare facilities. The Defendants' exclusion of Plaintiffs from participation has caused and continues to cause these Aetna members to suffer discriminatory impact, as the members will no longer have readily available access to healthcare. Defendants' policies regarding the mobile clinics have a disproportionate impact on minority groups, and have no legitimate, lawful purpose.

97. Defendants have furthermore denied benefits of the Aetna health program by failing to pay for patient claims. Again, because many of the Aetna members under the care of the Plaintiffs are members of minority groups of race, color, or national original, the failure to pay for these claims has had a discriminatory impact on these Aetna members. Dr. Frankel, has advocated for the rights of these patients to have access to healthcare, and to have the right to necessary

healthcare testing to discover and prevent strokes, heart attacks, and other cardiovascular ailments. Defendants have retaliated against the Plaintiff for Plaintiffs' advocacy of patient rights by terminating Dr. Frankel as an approved Aetna provider.

98. In light of the foregoing violations, the Court should enjoin the Defendants from refusing to renew the contract with Plaintiffs and award an amount of monetary damages that the Court deems fair and just, but at least in the amount of $900,000.00, together with interest thereon at 12% per annum from the dates that the claims were made.

## AND AS FOR THE ELEVENTH CAUSE OF ACTION

99.     Paragraphs 1-98 are restated and realleged with the same force and effect as if fully stated above.

100.    The Health Insurance Portability and Accountability Act Privacy Rule, ("Privacy Rule") at 45 C.F.R. § 164.502, prohibits covered entities or business associates from using or disclosing protected health information, subject to enumerated required and permissible exceptions.

98.     Covered entities include health plans, which are defined as individual or group plans that provide or pay the cost of medical care.  45 C.F.R. § 160.102; 45 C.F.R. § 160.103.

99.     Protected health information is individually identifiable health information transmitted or maintained by or in electronic media or any other form or medium. 45 C.F.R. § 160.103.

100.    Defendants are covered entities for purposes of the Privacy Rule.

101.    Defendants violated the Privacy Rule by directing staff members at the Plaintiffs' medical clinic to send client files containing protected health information to Defendants without

knowledge or consent of either the patients or the Plaintiffs.  This directive by Defendants constitutes  unauthorized use of protected health information in violation of the Privacy Rule.

102.   In light of the foregoing violations, this Court should award Plaintiffs less than $50,000 for each violation or more than $1,500,000 for identical violations that occurred within a calendar year. These amounts are specifically provided for in 45 C.F.R. § 160.402 and 45 C.F.R. § 160.404(b)(2)(iv), which state that violations due to willful neglect that are not corrected within thirty days from the time the covered entity knew or would have known through the exercise of reasonably diligence that the violation occurred will be subject to one of the aforementioned penalties.

## AS AND FOR THE TWELFTH CAUSE OF ACTION

103.   Paragraphs 1-102 are restated and realleged with the same force and effect as if fully stated above.

104.   To the extent the Court determines that Plaintiffs breach of contract claims are pre-empted by ERISA. Plaintiffs assert a cause of action pursuant to 28 U.S.C. § 1132(a)(1)(B) to recover unpaid claims assigned to Plaintiffs by Plaintiffs' Aetna patients. Section 1132(a)(1)(B) allows a beneficiary under a plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiffs seek an injunction preventing Defendants from terminating Dr. Frankel as an approved Aetna provider and further preventing Defendants from denying or delaying payment of covered services.

105.   In accordance with the Participating Provider Agreement, Plaintiffs' Aetna patients assigned their benefits under the Aetna plan to Plaintiffs.

106.    At the time this case was commenced, Defendants had failed to pay claims in excess of $900,000.00 for covered services provided to Aetna patients.

107.    In light of the above, foregoing violations, the Court should enjoin the Defendants from refusing to renew the Contract with Plaintiffs and award an amount of monetary damages that the Court deems fair and just, but at least in the amount of $900,000.00, together with interest thereon at 12% per annum from the dates that the claims were made.

## AS AND FOR THE THIRTEENTH CAUSE OF ACTION

108.    Paragraphs 1-107 are restated and realleged with the same force and effect as if fully stated above.

109.    Upon information and belief Aetna is a plan administrator of certain health care benefit plans, relevant to Plaintiffs claims against the Defendants in this action.

110.    ERISA defines a fiduciary as any person "to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of [an employee benefit] plan." § 3(21)(A)(iii), 29 U. S. C. § 1002(21)(A)(iii).

111.    The Defendants in this action constitute fiduciaries as Defined under ERISA.

112.    In accordance with the Participating Provider Agreement, Plaintiffs' Aetna patients assigned their benefits under the Aetna plan to Plaintiffs.

113.    Defendants have violated 29 U.S.C. § 1140 by interfering with protected rights under ERISA plans administered by the Defendants.

114.    Plaintiffs provided covered services to patients with health care coverage under plans administered by Aetna, through use of the mobile clinics. The covered healthcare services provided by Plaintiffs through the mobile clinics were provided at the request of patients and their employer.

115.    Specifically, Defendants have violated 29 U.S.C. §1140 by improperly refusing to pay claims for covered services provided to Aetna patients; retaliating against employees covered by plans administered by Aetna by restricting patient access to healthcare; and by eliminating access to the mobile clinics at employee worksites by terminating Dr. Frankel as an approved Aetna.

116.    For the reasons above, and injunction should be issued preventing Defendants from interfering with protected rights under ERISA plans administered by Aetna, including terminating or refusing to renew its Contract with Dr. Frankel as an approved Aetna provider, and refusing to pay for covered services provided to Aetna patients through use of the mobile clinics.

    **WHEREFORE**, Plaintiffs respectfully requests that the following relief be entered against the Defendants:

    (1)     That the Court enjoin Defendants from terminating or refusing to renew the Contract;

    (2)     That Plaintiffs be awarded damages in the amount unpaid, along with interest thereon, for services provided by the Plaintiffs to Defendants' Members, with said amounts to be determined at trial;

    (3)     That Plaintiffs be awarded attorneys' fees and costs associated incurred in this action;

    (4)     That punitive damages be imposed against the Defendants and made payable to Plaintiffs;

    (5)     That Defendants be prohibited from withholding payment or threatening to terminate the Contract in the future; and

(6)     For such other relief as the Court deems just and proper.

Dated:  White Plains, New York
        August **20**, 2018

                                   Respectfully submitted,

                                   By: _____
                                        Todd S. Cushner, Esq.
                                        Cushner & Associates, P.C.
                                        *Attorneys for Plaintiff*
                                        399 Knollwood Road, Suite 205
                                        White Plains, New York 10603
                                        (914) 600-5502 / (914) 600-5544
                                        todd@cushnerlegal.com

## VERIFICATION

STATE OF NEW YORK          )

                           ) SS.:

COUNTY OF                  )

        I, DR. PERRY FRANKEL, being duly sworn, deposes and says:

        I am a Plaintiff in this above-entitled action.  I have read the foregoing Verified

Complaint and know it to be true to my knowledge, except as to matters therein stated to be

alleged on information and belief and as to those matters I believe them to be true.

24

(6)   For such other relief as the Court deems just and proper.

Dated: White Plains, New York
       August 20, 2018

Respectfully submitted,

By: _____
    Todd S. Cushner, Esq.
    Cushner & Associates, P.C.
    *Attorneys for Plaintiff*
    399 Knollwood Road, Suite 205
    White Plains, New York 10603
    (914) 600-5502 / (914) 600-5544
    todd@cushnerlegal.com

## VERIFICATION

STATE OF NEW YORK        )
                         ) SS.:
COUNTY OF Nassau         )

I, DR. PERRY FRANKEL, being duly sworn, deposes and says:

I am a Plaintiff in this above-entitled action. I have read the foregoing Verified

Complaint and know it to be true to my knowledge, except as to matters therein stated to be

alleged on information and belief and as to those matters I believe them to be true.

24

DR. PERRY FRANKEL

Sworn to and signed before me
this _____ day of _____ 2018

NOTARY PUBLIC

TODD S. CUSHNER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02CU6071553
Qualified in Westchester County
Commission Expires March 18, 20__

25