**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PERRY A. FRANKEL, M.D. AND ADVANCED CARDIOVASCULAR DIAGNOSTICS, PLLC, | Civil Action No.: 1:18-cv-06378-ER-BCM |
| Plaintiffs, | |
| v. | NOTICE OF MOTION TO DISMISS |
| U.S. HEALTHCARE, INC. d/b/a AETNA U.S. HEALTHCARE, INC. d/b/a AETNA HEALTH, INC., AND AETNA, INC. d/b/a AETNA. | |
| Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**Connell Foley LLP**

Patricia A. Lee
Elyse S. Tormey
888 Seventh Avenue, 9th Floor
New York, NY 10106
212-307-3700
PLee@connellfoley.com
ESchier@connellfoley.com

**Elliott Greenleaf, P.C.**

Mark J. Schwemler
Gregory S. Voshell
Thomas B. Helbig, Jr.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-977-1000
mjs@elliottgreenleaf.com
gsc@elliottgreenleaf.com
tbh@elliottgreenleaf.com

*Counsel for Defendant Aetna Life Insurance Company*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................... 3

III.    ARGUMENT ............................................................................................. 5

        A.    Standard of Review........................................................................ 5

        B.    Counts I-VIII Are Preempted by ERISA. ..................................... 5

        C.    Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Can Be Granted
              on All Claims, Whether Preempted or Not. ................................ 10

              1.    Plaintiffs' Quasi-Contractual Claims (Counts I, V, and VI)
                    Are Duplicative of Plaintiffs' Breach of Contract Claim. ........................ 10

                    (a).    Count I - Duty of Good Faith and Fair Dealing............................ 10

                    (b).    Count V - Promissory Estoppel .................................... 12

                    (c).    Count VI – Unjust Enrichment ...................................... 12

              2.    Plaintiffs' Tortious Interference (Count VII) Claim Fails
                    Because It Seeks to Recover in Tort for a Breach of
                    Contract and Because Plaintiffs Failed to Plead that Any
                    Conduct of Aetna's Led to a Breach of Any Contracts with
                    Plaintiffs. ........................................................................ 15

              3.    Plaintiffs' Claim for Violation of NY General Business
                    Law § 349 (Count II) Fails Because This Claim Concerns
                    Merely a Private Contractual Dispute Which Is Outside the
                    Scope of the Statute. .................................................... 17

              4.    Count IV (Violation of ACA, 42 U.S.C. §§ 300-gg-42,
                    18022(b)(1)) Should Be Dismissed Because Plaintiffs'
                    Complaint is Devoid of Any Factual Allegations that Aetna
                    Failed to Renew Any Individual's Health Insurance Plan
                    Purchased in the Individual Market. ............................. 19

              5.    Plaintiffs' Claims for Violations of NY Pub. Health L. §§
                    4406-d(2)(a), 4406-d(2)(d), 4406-d(5), and NY Ins. L.
                    4803(b)(1) (Count IX) Are Belied by the Express
                    Allegations of Plaintiffs' Amended Complaint. ...................... 20

              6.    Plaintiffs' Cannot Maintain a Broad Claim for a Violation
                    of NY Ins. L. § 3224-a (Count VIII)....................................... 22

7.	Count X (Violation of 42 U.S.C. § 18116(a)) Fails as a Matter of Law Because Plaintiffs Are Not Members of a Protected Class...........................................................................23

8.	Count XI (Violation of HIPAA) Fails as a Matter of Law Because HIPAA Does Not Contain a Private Right of Action.........................................................................................24

IV.	CONCLUSION ......................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ....................................................................................... 6

*AFP Mfg. Corp. v. AFP Imaging Corp.*,
  2018 U.S. Dist. LEXIS 112767 (S.D.N.Y. July 5, 2018) .................................... 13

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*,
  2003 U.S. Dist. LEXIS 8594 (S.D.N.Y. May 21, 2003) ..................................... 17

*Anthem, Inc. v. Express Scripts, Inc.*,
  2017 U.S. Dist. LEXIS 43281 (S.D.N.Y. Mar. 23, 2017) ............................. 10, 10-11, 12, 13

*Arditi v. Lighthouse Int'l*,
  676 F.3d 294 (2d Cir. 2012) ..................................................................... 6, 7, 8

*Benefitvision Inc. v. Gentiva Health Servs.*,
  2014 U.S. Dist. LEXIS 10407 (E.D.N.Y. Jan. 28, 2014) ................................ 12, 13

*Boey Chau v. Hartford Life Ins. Co.*,
  167 F. Supp. 3d 564 (S.D.N.Y. 2016) .............................................................. 9-10

*Bond v. Conn. Bd. of Nursing*,
  622 F. App'x 43 (2d Cir. 2015) ........................................................................ 24

*Broad St. Surgical Ctr., L.L.C. v. UnitedHealth Grp., Inc.*,
  2012 U.S. Dist. LEXIS 30466 (D.N.J. Mar. 6, 2012) ................................... 14-15

*Brown v. Brown*,
  785 N.Y.S.2d 417 (1st Dep't 2004) ................................................................. 16

*Buchwald v. Renco Grp.*,
  539 B.R. 31 (S.D.N.Y. 2015) .......................................................................... 14

*Celle v. Barclays Bank Pub. Ltd. Co.*,
  851 N.Y.S.2d 500 (1st Dep't 2008) ................................................................. 12

*Chang v. Pfizer, Inc.*,
  2017 U.S. Dist. LEXIS 34796 (S.D.N.Y. Mar. 9, 2017) ..................................... 7

*CingleVue Int'l Pty, Ltd. v. eXo Platform NA, L.L.C.*,
  2014 U.S. Dist. LEXIS 93634 (N.D.N.Y. July 10, 2014) ................................... 23

*Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*,
  610 F.3d 44 (2d Cir. 2010) ......................................................................... 11, 12

*Dorsett-Felicelli, Inc. v. County of Clinton*,
    2011 U.S. Dist. LEXIS 29197 (N.D.N.Y. Mar. 22, 2011) .................................... 17

*Doyle v. Mastercard Int'l Inc.*,
    700 F. App'x 22 (2d Cir. 2017) ...................................................................... 11

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
    754 F.3d 136 (2d Cir. 2014) ............................................................... 17, 18, 19

*ExamWorks, Inc. v. Soltys*,
    2017 U.S. Dist. LEXIS 175307 (W.D.N.Y. Aug. 10, 2017) ................................. 13

*Grant v. Abbott House*,
    2016 U.S. Dist. LEXIS 21195 (S.D.N.Y. Feb. 22, 2016) ................................... 17

*Harvey v. Members Emps. Tr. for Retail Outlets*,
    96 N.Y.2d 99 (2001) ....................................................................................... 9

*In re Commodity Exch. Inc.*,
    213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................. 14

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000) .......................................................................... 14

*Kolasinski v. Cigna Healthplan, Inc.*,
    163 F.3d 148 (2d Cir. 1998) ............................................................................ 9

*Long Island Neuroscience Specialists v. Fringe Benefit Funds Local 14-14b Int'l Union Of
Operating Eng'rs*,
    2018 U.S. Dist. LEXIS 129222 (E.D.N.Y. July 31, 2018) .................................. 9

*Mitchell v. Macy's, Inc.*,
    2018 U.S. Dist. LEXIS 165613 (S.D.N.Y. Sept. 25, 2018) ................................. 24

*Montefiore Med. Ctr. v. Teamsters Local 272*,
    642 F.3d 321 (2d Cir. 2011) ................................................................... 6, 7, 8

*Mraz v. JPMorgan Chase Bank, N.A.*,
    2018 U.S. Dist. LEXIS 75217 (E.D.N.Y. May 3, 2018) ..................................... 17

*N.Y. Univ. v. Cont'l Ins. Co.*,
    639 N.Y.S.2d 283 (1995) ....................................................... 17-18, 18, 19

*Neidich v. Estate of Neidich*,
    222 F. Supp. 2d 357 (S.D.N.Y. 2002) .............................................................. 9

*Neurological Surgery v. Siemens Corp.*,
    2017 U.S. Dist. LEXIS 206010 (E.D.N.Y. Dec. 12, 2017) .............................. 8, 10

*Nielsen Co. v. Success Sys.*,
    112 F. Supp. 3d 83 (S.D.N.Y. 2015) ...................................................... *passim*

iv

*Paneccasio v. Unisource Worldwide, Inc.*,
  532 F.3d 101 (2d Cir. 2008) ................................................................. 8

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
  153 F. Supp. 3d 628 (S.D.N.Y. 2015) ....................................... 7, 21, 23

*Phx. Ancient Art v. J. Paul Getty Tr.*,
  2018 U.S. Dist. LEXIS 53270 (S.D.N.Y. Mar. 29, 2018) .......... 5, 10, 12, 18, 19-20

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*,
  793 F. Supp. 2d 651 (S.D.N.Y. 2011) .................................................. 14

*Regnante v. Sec. & Exch. Officials* ,
  134 F. Supp. 3d 749 (S.D.N.Y. 2015) ................................................. 14

*Rodrigues v. N.Y.C. Mental Health & Hygiene* ,
  2018 U.S. Dist. LEXIS 60130 (S.D.N.Y. Apr. 6, 2018) ....................... 24

*Saini v. CIGNA Life Ins. Co.*,
  2018 U.S. Dist. LEXIS 68908 (S.D.N.Y. Apr. 24, 2018) ............. 9, 18, 19

*Salzberg v. Aetna Ins. Co.*,
  2018 U.S. Dist. LEXIS 40152 (S.D.N.Y. Mar. 12, 2018) ...................... 7

*Spanierman Gallery, PSP v. Love*,
  2003 U.S. Dist. LEXIS 19511 (S.D.N.Y. Oct. 30, 2003) ...................... 10

*Star Multi Care Servs. v. Empire Blue Cross Blue Shield*,
  6 F. Supp. 3d 275 (E.D.N.Y. 2014) ....................................................... 9

*Teller v. Bill Hayes, Ltd.*,
  630 N.Y.S.2d 769 (2d Dep't 1995) .......................................... 17, 18, 19

*Travelers Indem. Co. v. Losco Grp., Inc.*,
  150 F. Supp. 2d 556 (S.D.N.Y. 2001) .................................................. 14

*Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*,
  2010 U.S. Dist. LEXIS 72642 (S.D.N.Y. July 20, 2010) ...................... 12

*Weinreb v. Xerox Bus. Servs., L.L.C.*,
  323 F. Supp. 3d 501 (S.D.N.Y. Aug. 29, 2018) ................................... 24

**Statutes**

29 U.S.C. § 1132 ....................................................................................... 6

29 U.S.C. § 1144 ....................................................................................... 8

42 U.S.C. § 300gg-42 ......................................................................... 19, 20

42 U.S.C. § 300gg-61 ............................................................................... 19

42 U.S.C. § 300gg-91 ............................................................................... 20

42 U.S.C. § 18022 ............................................................................................... 19

42 U.S.C. § 18116 ............................................................................................... 23

42 U.S.C. § 80001 ................................................................................................. 5

N.Y. Gen. Bus. Law § 349 ............................................................................. *passim*

N.Y. Pub. Health Law § 4803 .................................................................. 20, 21, 22

N.Y. Ins. Law § 3224-a ....................................................................... 2, 3, 9, 22, 23

N.Y. Pub. Health Law § 4406-d ................................................................ 9, 20, 21

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. 2, 1

Defendant Aetna Life Insurance Company, (improperly pled in the caption as U.S. Healthcare, Inc. d/b/a Aetna U.S. Healthcare, Inc. d/b/a Aetna Health, Inc., and Aetna, Inc. d/b/a Aetna) hereby moves this Court to dismiss Plaintiffs Perry A. Frankel, M.D. and Advanced Cardiovascular Diagnostics, PLLC's Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    **INTRODUCTION**

Despite the myriad of federal and state statutory claims, common law torts, and quasi-contractual claims across eleven (11) counts in the Amended Complaint, the crux of Plaintiffs' claims is that Aetna denied coverage for services that Plaintiffs allegedly rendered at its "Mobile Clinics."  However, payment of these claims is governed by the definition of "Covered Services," which in turn is governed by the terms of the individual health plans of Aetna's members.  As such, each of Plaintiffs' New York common and statutory law claims in Counts I through VII, which seek payment for "Covered Services," is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").   Furthermore, Count VIII, which likewise seeks payment for "Covered Services" pursuant to a New York state law that regulates insurance, is preempted by ERISA with respect to all claims concerning self-funded Plans.

Even assuming *arguendo* that some or all of these claims are not preempted by ERISA, which they are, Plaintiffs' eleven (11) counts are also each subject to dismissal for additional reasons.   Plaintiffs' quasi-contractual claims for breach of the duty of good faith and fair dealing (Count I), promissory estoppel (Count V), and unjust enrichment (Count VI) are all based upon the exact same conduct that Plaintiffs allege is a breach of the Agreement, and are thus impermissibly duplicative of the breach of contract claim (Count III).

Plaintiffs' tortious interference claim is merely a breach of contract claim disguised as a

1

tort and that claim also fails to satisfy the elements of such a claim even if it was not barred by the presence of the express contract.  Likewise, Plaintiffs' claim that Aetna violated N.Y. General Business Law § 349 fails because Plaintiffs' allegations amount to nothing more than a simple contractual dispute, which does not fall within the ambit of this consumer protection statute.

Plaintiffs also contend that despite the unambiguous contractual provision permitting either party to terminate the Agreement by non-renewal each year, Aetna's alleged "termination" of the Agreement was unlawful under New York statutes because Aetna allegedly failed to give Plaintiffs an explanation for the *non-renewal*.  However, the statutes expressly provide that where a termination occurs by virtue of either party's exercise of the right not to renew a contract at the expiration of the contract period, such non-renewal "shall not constitute a termination" for purposes of those statutes.  Moreover, the express allegations of Plaintiffs' Amended Complaint, and the exhibits attached to Plaintiffs' original Complaint, plainly and unambiguously show that Aetna complied with the statutory requirements even if they did apply.  Indeed, Plaintiffs expressly plead that Aetna did give an explanation for the non-renewal – that Aetna was "rationalizing its network."  Likewise, Plaintiffs' claim that Aetna violated N.Y. Insurance Law § 3224-a by failing to inform Plaintiffs within thirty (30) days of the reason it denied claims is belied by the express allegations of Plaintiffs' Amended Complaint, in which Plaintiffs plead that Aetna informed Plaintiffs on May 4, 2017 that services rendered at Plaintiffs' "Mobile Clinics" were not "Covered Services."

Finally, Plaintiffs' claims that Aetna violated provisions of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 *et seq.* ("Affordable Care Act" ) and the Health Insurance Portability and Accountability Act ("HIPAA") fail as a matter of law because

Plaintiffs have no standing to assert such claims.  Moreover, the Amended Complaint is devoid of any factual allegations indicating that Aetna violated the asserted provisions of these statutes. Accordingly, for these reasons, and those set forth in more detail below, this Court should grant Aetna's motion to dismiss.

## II.     FACTUAL BACKGROUND

According to the Amended Complaint, Plaintiff Perry A. Frankel, M.D. executed a Specialist Physician Agreement with Aetna on or about April 22, 1998.  (ECF No. 15, Am. Compl. ¶ 7.)  Plaintiff Advanced Cardiovascular Diagnostics, PLLC is not a party to the Agreement.  (Ex. 1, at p.1.)

The crux of Plaintiffs' Amended Complaint is that Aetna breached the Agreement by failing to pay Plaintiffs for "Covered Services" rendered to Aetna members in connection with Plaintiffs' "Mobile Clinics."  (Am. Compl. ¶¶ 1, 11-15, 22-23, 38, 41, 47, 50, 52-53, 59-60, 63-64, 68-69, 78, 83-84, 99-100.)  The Agreement defines "Covered Services" as "[t]hose Medically Necessary Services which a Member is entitled to receive under the terms and conditions of a Plan."  (*Id.* ¶ 19; Ex. 1 at § 12.4.)  Thus, "the terms and conditions" of each Aetna member's Health Plan governs whether or not Plaintiffs are entitled to reimbursement for services rendered. (*Id.* ¶ 19; Ex. 1, at § 12.4.)  The Agreement also provides that "no action, regardless of form, arising out of or related to this Agreement may be brought by any party more than twelve (12) months after such cause of action has arisen."  (Ex. 1, at § 11.3.)

Plaintiffs allege that on May 4, 2017, more than a year before Plaintiffs initiated this action, Aetna informed Plaintiffs that services rendered at Plaintiffs' "Mobile Clinics" were not "Covered Services" under the Agreement.  (Am. Compl. ¶ 22; Ex. 2.)  Thereafter, Plaintiffs allege that Aetna denied payment for services rendered at the "Mobile Clinics."  (Am. Compl. ¶ 24.)  Plaintiffs allege that the failure to pay for these services, which Plaintiffs contend are in

excess of $900,000, constitutes a breach of the Agreement.  (*Id*. at ¶¶ 24, 47, 53.)

Plaintiffs also allege that Aetna terminated the Agreement in violation of federal and New York law.  (*Id*. at ¶¶ 30, 56-60, 86-89, 95-97.)  Plaintiffs allege that Aetna did this "without reason or explanation."  (*Id.* at ¶¶ 86-87). However, according to the allegations and exhibits attached to the Amended Complaint, Aetna issued a Notice to Plaintiffs on September 25, 2017, informing Plaintiffs that Aetna would not be renewing the Agreement.  (*Id.* at ¶ 25.)  In the Notice, Aetna explained that it was exercising its bargained-for non-renewal right under Section 7.2 of the Agreement.[1]  (Ex. 3, at 1.)  Consistent with its prior expressed concerns over the use of "Mobile Clinics" not being an appropriate part of Aetna's network of providers, Aetna's Notice further apprised Dr. Frankel that the reason it was not renewing the Agreement was because "Aetna is rationalizing its network."  (*Id.*)  The Notice also advised Dr. Frankel that he had a right to appeal that non-renewal decision to an Aetna Medicare Appeal Committee and provided instructions on how to do so.  (*Id.*)

Thereafter, Plaintiffs allege that they filed an appeal of the non-renewal decision, which was upheld by Aetna on February 16, 2018.  (Am. Compl. ¶ 26.)  In upholding its decision, Aetna once again explained that it was taking this action because it was "rationalizing its network."  (*Id.*)  According to the Amended Complaint, the non-renewal was to take effect on July 31, 2018, ten (10) months after Aetna notified Plaintiffs of its decision.  (*Id.* at ¶ 27.)

On May 25, 2018, Plaintiffs filed a Complaint against Aetna in the Supreme Court of the State of New York, New York County.  The Complaint asserted nine (9) causes of action, purportedly sounding in breach of contract, breach of the duty of good faith and fair dealing,

---

[1] Section 7.2  provides: "<u>Termination by Non-Renewal</u>. This Agreement may terminate upon any anniversary of the Effective Date, provided that the party desiring not to renew this Agreement provides at least sixty (60) days prior written notice of such non-renewal to the other party." (Ex. 1, at § 7.2.)

promissory estoppel, unjust enrichment, and tortious interference, as well as statutory violations

of the New York Insurance Law, New York Public Health Law, and the Affordable Care Act.

Aetna removed the action to this Court on July 13, 2018 due to the presence of federal

statutory claims and because Plaintiffs' Complaint asserted state law claims that are completely

preempted by ERISA.  (*See* ECF No. 1.)  Plaintiffs did not move to remand this action back to

state court.   Then, on August 21, 2018, Plaintiffs filed an Amended Complaint in this Court that

did not add any additional factual allegations, but did assert two additional claims against Aetna,

namely, that Aetna violated both the anti-discrimination provisions of the Affordable Care Act

and the disclosure provisions of HIPAA.  (Am. Compl. ¶¶ 90-102.)

For the reasons set forth below, this Court should grant Aetna's motion and dismiss all

claims in Plaintiffs' Amended Complaint, with prejudice.

## III.   ARGUMENT

### A.      Standard of Review

"When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all

factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's

favor."  *Phx. Ancient Art, S.A. v. J. Paul Getty Tr.*, 2018 U.S. Dist. LEXIS 53270, at *14-15

(S.D.N.Y. Mar. 29, 2018) (Ramos, J.).   "However, the Court is not required to credit 'mere

conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" *Id.*

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Thus, if the plaintiff's non-conclusory

factual allegations do not "nudge[] [his] claims across the line from conceivable to plausible,

[the] complaint must be dismissed." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570).

### B.      Counts I-VIII Are Preempted by ERISA.

In this action, Plaintiffs claim that Aetna did not pay them at least $900,000 in submitted

medical claims.  These claims, however, were administered by Aetna under the terms of

numerous non-governmental, self-funded employee benefit plans governed by ERISA, many of

which are self-funded plans.  (*See* Ex. 4, Affidavit of John Privet, ¶ 4.)  These claims for

payment placed at issue by Plaintiffs in this case are therefore subject to the terms of ERISA.

Plaintiffs assert claims purportedly sounding in New York common and statutory law,

alleging an entitlement to the payment of benefits for allegedly providing "Covered Services."

These state law claims are completely preempted by ERISA, and thus these purported state law

claims are "necessarily federal in character." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642

F.3d 321, 327 (2d Cir. 2011); *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298 (2d Cir. 2012).

Indeed, ERISA creates a federal cause of action for claims by a participant or beneficiary to

recover, *inter alia*, benefits due under the terms of an ERISA plan and to enforce any terms

under that plan.  29 U.S.C. § 1132(a)(1)(B). ERISA provides the exclusive remedy for actions

relating to an ERISA plan and completely preempts any state law claims removed to Federal

Court which seek reinstatement of terminated benefits and damages. *Aetna Health Inc. v. Davila*,

542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or

supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to

make the ERISA remedy exclusive and is therefore preempted."); *Montefiore Med. Ctr.*, 642

F.3d at 327 (same).

"[C]laims are completely preempted by ERISA if they are brought (i) by 'an individual

[who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),' and (ii)

under circumstances in which 'there is no other independent legal duty that is implicated by a

defendant's actions.'" *Montefiore Med. Ctr.*, 642 F.3d at 327 (quoting *Davila*, 542 U.S. at 209);

*Arditi*, 676 F.3d 299.

Here, the Plaintiffs "could have brought their claims under ERISA § 502(a)(1)(B)"

6

because Plaintiffs' claims concern the "right to payment" as opposed to the "amount of payment," *see Montefiore Med. Ctr.*, 642 F.3d at 331; *Chang v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 34796, at *14 (S.D.N.Y. Mar. 9, 2017), and because they necessarily "depend[] on an interpretation of the terms of an ERISA-governed employee benefit plan," *id*. (*See* Am. Compl. at ¶¶ 1, 19, 38, 41, 47, 50, 52-53, 59-60, 63-64, 68-69, 78, 83-84, 99-100; Ex. 1, at § 4.5.)[2]  This is because Plaintiffs' alleged right to payment id dependent upon what constitutes "Covered Services," which is defined in the Agreement as "Those Medically Necessary Services which a Member is entitled to receive ***under the terms and conditions of a Plan***."  (Ex. 1, at § 12.4; emphasis added.)

Moreover, "there is no other independent legal duty that is implicated by a defendant's [alleged] actions" because the claims asserted in Plaintiffs' Amended Complaint are "inextricably intertwined" with, and therefore dependent upon, the underlying health benefit plans governing the claims for which reimbursement is sought.  *Montefiore Med. Ctr.*, 642 F.3d at 332; *Arditi*, 676 F.3d at 300; *Salzberg*, 2018 U.S. Dist. LEXIS 40152, at *8; *Chang*, 2017 U.S. Dist. LEXIS 34796, at *20. This is because Plaintiffs assert that Aetna failed to make payment to Plaintiffs for "Covered Services," which, according to the Agreement, is defined by a member's health benefit plan, not the Agreement, as set forth above.  (Am. Compl. at ¶ 19; Ex. 1, at § 12.4 (defining "Covered Services" as "Those Medically Necessary Services which a Member is entitled to receive under the terms and conditions of a Plan.")).

Thus, while Plaintiffs purport to seek payment from Aetna based on state law, the claims

---

[2] This Court can consider this document in adjudicating Aetna's motion to dismiss because Plaintiffs expressly reference and rely upon this document in the Amended Complaint.  *See Pehlivanian v. China Gerui Advanced Materials Grp., Ltd*., 153 F. Supp. 3d 628, 642 (S.D.N.Y. 2015) (Ramos, J.).  This Agreement was also attached to Plaintiffs' original Complaint as Exhibit A.  (*See* ECF No.1-2, at Ex. A.)

in the Amended Complaint arise out of obligations embodied in and defined by the health benefit plans, and are thus "inextricably intertwined with the interpretation of Plan coverage and benefits," which is governed exclusively by federal law. *Montefiore Med. Ctr.*, 642 F.3d at 332; *Arditi*, 676 F.3d at 300.  Therefore, all of Plaintiffs' claims which purport to seek payment for "Covered Services" under state law (Counts I-VIII) are preempted by ERISA.  *Montefiore Med. Ctr.*, 642 F.3d at 332; *Arditi*, 676 F.3d at 300.

Moreover, under 29 U.S.C. § 1144(a), ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.*  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008). This applies to both state statutory and common law claims.  *Id.*; *see also Neurological Surgery v. Siemens Corp.*, 2017 U.S. Dist. LEXIS 206010, at *9 (E.D.N.Y. Dec. 12, 2017).

As set forth above, Counts I-VII are all state law claims that "relate to" an employee benefit plan because these claims seek reimbursement for "Covered Services" that were allegedly wrongfully denied.  (Am. Compl. at ¶¶ 1, 19, 38, 41, 47, 50, 52-53, 59-60, 63-64, 68-69, 78, 83-84, 99-100.)  "Covered Services" are expressly defined as "Those Medically Necessary Services which a Member is entitled to receive ***under the terms and conditions of a Plan***."  (Ex. 1, at § 12.4; emphasis added.)  Thus, each of these claims "relates to" an employee benefit plan, and is thus expressly preempted by ERISA, 29 U.S.C. § 1144(a).

However, there is an exception to "related to" preemption, as the statute provides that it does not apply to any state law "which regulates insurance, banking, or securities."  29 U.S.C. 1144(b)(2).  "It is well established in our case law that ***a state law must be 'specifically directed toward' the insurance industry*** in order to fall under ERISA's saving clause; ***laws of general***

*application that have some bearing on insurers do not qualify*."  *Star Multi Care Servs. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014) (emphasis added) (quoting *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003)).  Thus, the only claim that could conceivable fall within these exception is Count VIII, which asserts a claim pursuant to New York Insurance Law § 3224-a.[3]  But, even with respect to this claim, the exception to express preemption does not apply to any claims that relate to self-funded plans. *See Harvey v. Members Employees Trust for Retail Outlets*, 96 N.Y.2d 99, 108 (N.Y. 2001) ("State laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.")

In sum, all claims in Counts I-VII are preempted by ERISA, whereas Count VIII is preempted by ERISA with respect to all claims for payment arising under self-funded Plans.  *See Kolasinski v. Cigna Healthplan, Inc*., 163 F.3d 148, 149 (2d Cir. 1998) (breach of contract claims preempted by ERISA); *Saini v. CIGNA Life Ins. Co*., 2018 U.S. Dist. LEXIS 68908, at *14 (S.D.N.Y. Apr. 24, 2018) (NY General Business Law § 349 claim preempted by ERISA); *Long Island Neuroscience Specialists v. Fringe Benefit Funds Local 14-14b Int'l Union Of Operating Eng'rs*, 2018 U.S. Dist. LEXIS 129222, at *15-17 (E.D.N.Y. July 31, 2018) (promissory estoppel claim preempted by ERISA); *Neidich v. Estate of Neidich*, 222 F. Supp. 2d 357, 375 (S.D.N.Y. 2002) (unjust enrichment claim preempted by ERISA); *Boey Chau v. Hartford Life Ins. Co*., 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016) (tortious interference claim preempted by ERISA); *Neurological Surgery v. Siemens Corp*., 2017 U.S. Dist. LEXIS 206010,

---

[3] Claims for breach of duty of good faith and fair dealing, NY General Business Law § 349, breach of contract, NY Public Health Law §4406(1), promissory estoppel, unjust enrichment, and tortious interference are not "specifically directed toward' the insurance industry."

at *14 (E.D.N.Y. Dec. 12, 2017) (NY Insurance Law § 3224-a preempted by ERISA).

Accordingly, Counts I-VIII should be dismissed.

### C.    Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Can Be Granted on All Claims, Whether Preempted or Not.

#### 1.    Plaintiffs' Quasi-Contractual Claims (Counts I, V, and VI) Are Duplicative of Plaintiffs' Breach of Contract Claim.

Plaintiffs assert three quasi-contractual claims in their Amended Complaint: (1) Count I -
breach of the duty of good faith and fair dealing; (2) Count V – promissory estoppel; and (3)
Count VI – unjust enrichment.  However, "where there is an enforceable written contract
governing the particular subject matter, claims based on quasi-contract theories . . . do not
provide a distinct basis for recovery."  *Anthem, Inc. v. Express Scripts, Inc.*, 2017 U.S. Dist.
LEXIS 43281, at *13-14 (S.D.N.Y. Mar. 23, 2017) (Ramos, J.); *see also Spanierman Gallery,
PSP v. Love*, 2003 U.S. Dist. LEXIS 19511, at *13 (S.D.N.Y. Oct. 30, 2003) (same).   Here, each
of Plaintiffs' quasi-contractual claims is premised upon the same underlying alleged conduct and
seeks the same damages as Plaintiffs' breach of contract claim (Count III).  Accordingly, Counts
I, V, and VI should be dismissed as duplicative of Plaintiffs' breach of contract claim.

#### (a).    Count I - Duty of Good Faith and Fair Dealing

"[W]hen a complaint alleges both a breach of contract and a breach of the implied
covenant of good faith and fair dealing based on the same facts, the latter claim should be
dismissed as redundant." *Phx. Ancient Art*, 2018 U.S. Dist. LEXIS 53270, at *27 (Ramos, J.)
(quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)); *Anthem, Inc.*, 2017
U.S. Dist. LEXIS 43281, at *12 (Ramos, J.) (dismissing plaintiff's "claim for breach of the
covenant as duplicative of ESI's breach of contract claim" because it "arises from the same
operative facts and predicate conduct as its breach of conduct claim, and it seeks the same
damages"); *Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22, 24 (2d Cir. 2017).  Furthermore, "[a]

10

cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of contract."  *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp*., 610 F.3d 44, 54 (2d Cir. 2010) (quoting *Deer Park Enters., LLC v. Ail Sys., Inc*., 870 N.Y.S.2d 89, 90 (2d Dep't 2008)); *Nielsen Co. (US), LLC v. Success Sys*., 112 F. Supp. 3d 83, 110 (S.D.N.Y. 2015) (dismissing breach of covenant of good faith claim because it "clearly is duplicative of its breach of contract claim as they both arise out of the same facts and seek the same damages")

  Here, Plaintiffs' claim for breach of the duty of good faith and fair dealing is expressly premised upon the same alleged conduct as Plaintiffs' breach of contract claim and seeks the exact same damages.  Indeed, Plaintiffs plead that Aetna is liable for breach of contract because Aetna allegedly stopped "paying claims to the Plaintiffs for services provided to Aetna members in accordance with the terms of the Contract" and "refuse[d] to pay claims on services provided to Aetna Members at Plaintiffs' Mobile Clinics."  (Am. Compl. ¶ 53.)  Plaintiffs then seek "in excess of $900,000" for this alleged breach of contract.  (*Id.*)

  Likewise, Plaintiffs plead that Aetna is liable for breach of the duty of good faith because Aetna allegedly "refus[ed] to pay claims for Covered Services" under the terms of the contract and "impos[ed] policies upon Plaintiff" that breach the contract, *i.e.* Aetna allegedly "refus[ed] to allow Plaintiff to provide service to Members through the Mobile Clinics" and refused to pay for services rendered at the Mobile Clinics.  (*Id.* ¶ 47.) As with their breach of contract claim, this claim also seeks damages "in excess of nine-hundred thousand dollars ($900,000.00)." (*Id*. ¶ 46.)

  Because Plaintiffs' claim for breach of duty of good faith and fair dealing (Count I) is based upon the same alleged conduct and seeks the same damages as Plaintiffs' breach of

contract claim (Count III), Count I must be dismissed with prejudice. *Phx. Ancient Art*, 2018 U.S. Dist. LEXIS 53270, at \*27 (Ramos, J.); *Anthem, Inc.*, 2017 U.S. Dist. LEXIS 43281, at \*12 (Ramos, J.); *Dist. Lodge 26*, 610 F.3d at 54; *Nielsen Co. (US), LLC*, 112 F. Supp. 3d at 110.

### *(b). Count V - Promissory Estoppel*

"Where a plaintiff also alleges breach of a contract, a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 2010 U.S. Dist. LEXIS 72642, at \*18 (S.D.N.Y. July 20, 2010); *Celle v. Barclays Bank P.L.C.*, 851 N.Y.S.2d 500, 501 (1st Dep't 2008) ("In the absence of a duty independent of the agreement, the promissory estoppel claim was duplicative of the breach of contract claim."); *Benefitvision Inc. v. Gentiva Health Servs. (USA)*, 2014 U.S. Dist. LEXIS 10407, at \*25 (E.D.N.Y. Jan. 28, 2014) ("[A] promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract.").

Here, Plaintiffs expressly plead that the duty giving rise to their promissory estoppel claim is **not independent** from any arising out of the contract.  Plaintiffs allege that the purported promise that they relied upon to their detriment was a "***contractual promise***."  (Am. Compl. ¶¶ 62, 65; emphasis added.)  Accordingly, Plaintiffs' promissory estoppel claim (Count V) is duplicative of their breach of contract claim and must be dismissed with prejudice.  *See Underdog Trucking, LLC*, 2010 U.S. Dist. LEXIS 72642, at \*18; *Celle*, 851 N.Y.S.2d at 501; *Benefitvision Inc.*, 2014 U.S. Dist. LEXIS 10407, at \*25.

### *(c) Count VI – Unjust Enrichment*

In Count VI, Plaintiffs allege that Aetna was unjustly enriched because Plaintiffs provided Aetna's members $900,000 in services "under the Contract" with Aetna and Aetna

failed to compensate Plaintiffs as set forth in that Contract. (Am. Compl. ¶¶ 68-69, 71.) This is the exact same conduct that Plaintiffs allege constitutes a breach of contract. (*See id.* ¶ 53.)

"[W]here, as here, 'both parties agree that a valid and enforceable contract exists between them, [a party] may not plead the quasi-contractual theory of unjust enrichment.'" *Anthem, Inc*, 2017 U.S. Dist. LEXIS 43281, at *14 (Ramos, J.) (quoting *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000)); *see also AFP Mfg. Corp. v. AFP Imaging Corp.,* 2018 U.S. Dist. LEXIS 112767, at *32, n. 4 (S.D.N.Y. July 5, 2018). Indeed, where neither party disputes that a contract existed between the parties, "a party may not proceed also on a quasi-contract theory 'because it is foreclosed by the very existence of the express contract.'" *Anthem, Inc*, 2017 U.S. Dist. LEXIS 43281, at *14 (Ramos, J.); *see also ExamWorks, Inc. v. Soltys*, 2017 U.S. Dist. LEXIS 175307, at *14 (W.D.N.Y. Aug. 10, 2017) (dismissing unjust enrichment claims because "[t]he pleadings in this case indicate that neither party disputes that the Employment Agreement is a valid contract between them which governs, among other things, the payment of severance and reimbursement of expenses").

Here, Plaintiffs plead, and Aetna does not dispute, that there was a binding express agreement between the parties that governed the provision of services and the payment of claims between Plaintiffs and Aetna. (*See, e.g.,* Am. Compl. ¶¶ 5, 7-9, 17-21, 53.) Thus, the services that Plaintiffs allege Aetna failed to pay for were all rendered, and governed by, the express terms of that Agreement, which in turn is governed by the terms of the individual health plans. Accordingly, Plaintiffs "may not plead the quasi-contractual theory of unjust enrichment.'" *Anthem, Inc*, 2017 U.S. Dist. LEXIS 43281, at *14 (Ramos, J.); *AFP Mfg. Corp.,* 2018 U.S. Dist. LEXIS 112767, at *32, n. 4; *ExamWorks, Inc.*, 2017 U.S. Dist. LEXIS 175307, at *14.

Additionally, Plaintiffs' unjust enrichment claim fails as a matter of law because

Plaintiffs have not, and cannot, plead that Aetna received a specific and direct benefit from Plaintiffs. Indeed, the defendant's receipt of a "***specific and direct benefit*** is necessary to support an unjust enrichment claim." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (emphasis added); *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015) (the "benefit must be both 'specific' and 'direct'"); *In re Commodity Exch. Inc.,* 213 F. Supp. 3d 631, 676 (S.D.N.Y. 2016) ("[C]ourts require proof that the defendant received a 'specific and direct benefit' from the property sought to be recovered, rather than an 'indirect benefit.'"); *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc*., 793 F. Supp. 2d 651, 679 n.141 (S.D.N.Y. 2011) (same).

In order for a benefit to be direct, "the defendant must either be put in possession of the benefit, or otherwise obtain financial relief because of the benefit." *Buchwald v. Renco Grp.*, 539 B.R. 31, 49 (S.D.N.Y. 2015). Significantly, this means that there is no direct benefit conferred on an *insurer* when services are rendered to one of the insurer's insureds. As the Court in *Travelers Indemnity Company v. Losco Group., Inc*., 150 F. Supp. 2d 556 (S.D.N.Y. 2001) explained:

> It is counterintuitive to say that services provided to an insured are also provided to its insurer. ***The insurance company derives no benefit from those services***; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit. In the absence of any authority espousing this theory—and Losco has provided none—I conclude that it would be futile for Losco to assert a claim against Travelers in quantum meruit.

*Id.* at 563 (emphasis added); *see also Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc*., 2012 U.S. Dist. LEXIS 30466, at *23 (D.N.J. Mar. 6, 2012) (Simandle, C.J.) (finding unjust enrichment claim failed as a matter of law because "the Plaintiff provided services to Patients 1-50 and any benefit conferred was conferred on Patients 1-50, not United. United, as the insurance

company, 'derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured - which hardly can be called a benefit'").

Accordingly, because Plaintiffs have not, and cannot, plead that they conferred a direct and specific benefit upon Aetna by providing services to Aetna's members, Plaintiffs' unjust enrichment claim fails as a matter of law for this second reason.

> **2.     Plaintiffs' Tortious Interference (Count VII) Claim Fails Because It Seeks to Recover in Tort for a Breach of Contract and Because Plaintiffs Failed to Plead that Any Conduct of Aetna's Led to a Breach of Any Contracts with Plaintiffs.**

In order to state a claim for tortious interference with contractual relations, a plaintiff must plead and prove: "[i] the existence of a valid contract between the plaintiff and a third party; [ii] the defendant's knowledge of the contract; [iii] the defendant's intentional procurement of the third-party's breach of the contract without justification; [iv] actual breach of the contract; and [v] damages resulting therefrom." *Nielsen Co. (US), LLC*, 112 F. Supp. 3d at 112 (quoting *CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 806 (2d Cir. 2013)).  Here, Plaintiffs' claim fails as a matter of law because this claim seeks to transform a basic breach of contract action into an actionable tort; because Aetna had justification, *i.e.*, an express contractual right, for engaging in the conduct at issue; and because the "contract" with which Aetna allegedly interfered is, at best, an at-will contract.

Plaintiffs contend that Aetna tortiously interfered with an alleged implied contract between Plaintiffs and Aetna members when Aetna issued a Notice of Non-Renewal pursuant to Section 7.2 of the Agreement.  (Am. Compl. ¶¶ 73, 75, 77.)  In other words, Plaintiffs are attempting to transform Aetna's exercise of its contractual rights into an independent tort. However, where "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an

action in tort, the claim is precluded." *Phx. Ancient Art, S.A.*, 2018 U.S. Dist. LEXIS 53270, at *1 (Ramos, J.); *Brown v. Brown*, 785 N.Y.S.2d 417, 419 (1st Dep't 2004) ("a simple breach of contract claim may not be considered a tort unless a legal duty independent of the contract ... has been violated.").

Furthermore, Plaintiffs cannot as a matter of law show that Aetna's alleged interference was "without justification." *Nielsen Co. (US), LLC*, 112 F. Supp. 3d at 112. Here, Plaintiffs allege that the purported "improper" or "tortious" conduct of Aetna was Aetna simply exercising its contractual right under Section 7.2 of the parties' Agreement. Indeed, Plaintiffs expressly plead that Aetna "intentionally procur[ed] the breach of contract between Plaintiffs' medical patients (Aetna members) and Plaintiffs" when Aetna issued a "Non-Renewal Notice indicating that Aetna would not renew Plaintiffs' Aetna contract." (Am. Compl. ¶ 77.) However, Section 7.2 of the parties' bargained-for agreement provides: "Termination by Non-Renewal: This Agreement may terminate upon any anniversary of the Effective Date, provided that the party desiring not to renew this Agreement provides at least sixty (60) days prior written notice of such non-renewal to the other party."[4] (Ex. 1, at § 7.2.) The exercise of a bargained-for contractual right cannot be the basis of a tortious interference claim because such conduct is not "without justification." *Nielsen Co. (US), LLC*, 112 F. Supp. 3d at 112.

Moreover, Plaintiffs allege that the implied contract that Aetna allegedly interfered with was formed between Plaintiffs and Aetna's members. Plaintiffs allege that this implied contract is formed "[u]pon treatment" from Plaintiffs and obligates Aetna's members "to pay a co-pay" after receiving treatment. (Am. Compl. ¶ 75.) Even assuming, *arguendo*, that this constitutes an implied contract, such implied contract is clearly "at-will." *See Dorsett-Felicelli, Inc. v. Cty. of*

---

[4] Aetna complied with the sixty (60) days' Notice requirement. (Am. Compl. ¶¶ 25-27.)

*Clinton*, 2011 U.S. Dist. LEXIS 29197, at *11 (N.D.N.Y. Mar. 22, 2011) ("A contract without fixed duration is terminable at will unless the parties expressly provide that it be perpetual."); *Nielsen Co. (US), LLC*, 112 F. Supp. 3d at 113 ("Because a Success Store could terminate this contract at any time, it was as a matter of law terminable at will.").  Plaintiffs cannot, and do not, contend, that patients were contractually obligated to receive medical care from Plaintiffs.

It is well-established that "a contract terminable at will cannot be the basis for a tortious interference with contract claim." *Grant v. Abbott House*, 2016 U.S. Dist. LEXIS 21195, at *24 (S.D.N.Y. Feb. 22, 2016); *AIM Int'l Trading, L.L.C. v. Valcucine S.P.A.*, 2003 U.S. Dist. LEXIS 8594, at *17 (S.D.N.Y. May 21, 2003) (same); *Mraz v. JPMorgan Chase Bank, N.A.*, 2018 U.S. Dist. LEXIS 75217, at *16 (E.D.N.Y. May 3, 2018) (same); *Dorsett-Felicelli, Inc.*, 2011 U.S. Dist. LEXIS 29197, at *11 (same); *Nielsen Co. (US), LLC*, 112 F. Supp. 3d at 113 (same). Accordingly, for this third reason, Plaintiffs' tortious interference claim fails as a matter of law.

> **3.    Plaintiffs' Claim for Violation of NY General Business Law § 349 (Count II) Fails Because This Claim Concerns Merely a Private Contractual Dispute Which Is Outside the Scope of the Statute.**

To state a claim pursuant to NY General Business Law § 349, a Plaintiff must plead: "1) that the challenged act or practice was consumer-oriented; 2) that it was misleading in a material way; and 3) that the plaintiff suffered injury as a result of the deceptive act." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014).

Significantly, this statute "was not intended to turn a simple breach of contract into a tort" nor "intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (2d Dep't 1995). Rather, "[t]he goals of GBL §§ 349-350 were major assaults upon fraud against consumers, particularly the disadvantaged." *Id.*; *see also N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.2d 283, 290 (N.Y. 1995) (holding that "the statute was primarily intended to reach" a "modest type of

transaction"). Indeed, New York courts have warned that this statute "should not be permitted to become an adjunct to ordinary commercial litigation" because contracts involving "complex arrangements, knowledgeable and experienced parties and large sums of money . . . d[o] not need the protection of General Business Law § 349." *Teller*, 630 N.Y.S.2d at 773.

Therefore, it is well-established that "[p]rivate contract disputes unique to the parties … would not fall within the ambit of the statute." *N.Y. Univ.*, 639 N.Y.S.2d at 290; *Teller*, 630 N.Y.S.2d at 773 (same); *Euchner-USA, Inc.*, 754 F.3d at 143 ("Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute."); *Saini v. CIGNA Life Ins. Co.*, 2018 U.S. Dist. LEXIS 68908, at *12 (S.D.N.Y. Apr. 24, 2018) ("Plaintiff's § 349 claim offers no explanation as to why CIGNA's denial of her claim for benefits was deceptive or misleading, and instead alleges in conclusory fashion that she is entitled to damages because of CIGNA's 'deceptive business practices.' For this reason, Plaintiff fails to state a prima facie § 349 claim.").

Here, Plaintiffs allege that Aetna violated § 349 "by failing to pay for services provided to its members" and "by restricting its providers ability to provide treatment and services," *i.e.*, allegedly forbidding Plaintiffs from using Mobile Clinics. (Am. Compl. ¶ 50.)[5] These are the exact same allegations that Plaintiffs allege constitute a breach of contract. (*Id*. ¶ 53.) In fact, in support of its §349 claim, Plaintiffs expressly plead that they were harmed because "Defendant enticed Plaintiff and other providers to enter into contracts to provide healthcare to Defendants members at a reduced 'contract rate' based on the implied understanding that Defendants would

---

[5] Plaintiffs also allege in vague and conclusory fashion that Aetna "us[ed] deception to entice medical providers . . . into entering into contracts to provide services," however, this gratuitous and false accusation is a pure legal conclusion which must be disregarded. *Phx. Ancient Art*, 2018 U.S. Dist. LEXIS 53270, at *14-15 (Ramos, J.). Furthermore, Plaintiffs' allegations concerning alleged marketing of products to *other individuals* cannot possibly be the basis of a deceptive act towards *Plaintiffs*. (Am. Compl. ¶ 51.)

make payments for services provided to its members." (*Id.* ¶ 52.)

Simply put, Plaintiffs' § 349 claim is really a "[p]rivate contract dispute[] unique to the parties" and thus does not "fall within the ambit of the statute." *N.Y. Univ.*, 639 N.Y.S.2d at 290; *Teller*, 630 N.Y.S.2d at 773; *Euchner-USA, Inc.*, 754 F.3d at 143; *Saini*, 2018 U.S. Dist. LEXIS 68908, at *12.

Accordingly, this Court should dismiss Count II with prejudice.

### 4.   Count IV (Violation of ACA, 42 U.S.C. §§ 300-gg-42, 18022(b)(1)) Should Be Dismissed Because Plaintiffs' Complaint is Devoid of Any Factual Allegations that Aetna Failed to Renew Any Individual's Health Insurance Plan Purchased in the Individual Market.

In Count IV, Plaintiffs allege in vague and conclusory fashion that Aetna violated 42 U.S.C. §§ 300gg-42 and 18022(b)(1). Section 300gg-42 states that "a health insurance issuer that provides individual health insurance coverage to an individual shall renew or continue in force such coverage at the option of the individual." 42 U.S.C. §§ 300gg-42(a). However, Plaintiffs' Amended Complaint is devoid of any allegation that Aetna failed to renew any individual's health plan (much less any health plan of Plaintiffs) when that individual elected to renew such coverage purchased in the individual market. Moreover, enforcement of this provision is expressly delegated to the individual States and the Secretary of the Department of Health and Human Services, and thus Plaintiffs have no standing to pursue this claim. *See* 42 U.S.C § 300gg-61(a). Likewise, Section 18022(b)(1) provides that an insurer must offer preventative care as part of its insurance plans, but the Amended Complaint fails to allege any facts whatsoever that Aetna's plans do not offer preventative care. 42 U.S.C. § 18022(b)(1).

Plaintiffs' vague and conclusory assertions that Aetna violated these statutes must therefore be disregarded. *Phx. Ancient Art*, 2018 U.S. Dist. LEXIS 53270, at *14-15 (Ramos, J.). There are simply no factual allegations in the Amended Complaint which could plausibly

support a finding that Aetna violated these statutes, or that Plaintiffs would have standing to pursue this claim.[6]

Accordingly, this Court should dismiss Count IV with prejudice.

> **5.      Plaintiffs' Claims for Violations of NY Pub. Health L. §§ 4406-d(2)(a), 4406-d(2)(d), 4406-d(5), and NY Ins. L. 4803(b)(1) (Count IX) Are Belied by the Express Allegations of Plaintiffs' Amended Complaint.**

In Count IX, Plaintiffs allege that Aetna's Non-Renewal of Plaintiffs' contract violates various New York statutes, NY Pub. Health L. §§ 4406-d(2)(a), 4406-d(2)(d), 4406-d(5), and N.Y. Ins. L. § 4803(b)(1).  However, the express allegations of Plaintiffs' Amended Complaint are fatal to any cause of action under these statutes because they make clear that Aetna's Non-Renewal Notice complied with each of its obligations under these New York statutes.

NY Pub. Health L. § 4406-d(2)(a) and N.Y. Ins. L. § 4803(b)(1) provide that an "insurer" or "health care plan" may not "terminate a contract with a health care professional" unless it provides the health care professional with "a written explanation of the reasons for the proposed contract termination and an opportunity for a review or hearing."  *Id*. The results of any such hearing "shall be provided in writing to the health care provider." NY Pub. Health L. §§4406-d(2)(d).  However, NY Pub. Health L. § 4406-d(3) and N.Y. Ins. L. § 4803(c) state that where an agreement provides the parties with a right of non-renewal at the expiration of the contract term, the non-renewal "**shall not constitute a termination**" for the purposes of those statutes.  NY Pub. Health L. § 4406-d(3); N.Y. Ins. L. § 4803(c) (emphasis added).

Here, Plaintiffs expressly plead that they alleged "termination" was actually a "**Non-**

---

[6] Indeed, even assuming *arguendo* that the Amended Complaint did contain sufficient factual allegations and that such statutes contained a private right of action, which they do not, Plaintiffs would not have standing to assert these claims because these statutes are directed at *individuals* who purchased health insurance in the *individual market*.  *See* 42 U.S.C. § 300gg-42(a), (b). Plaintiffs have not, and cannot, plead that they are *individuals* who purchased insurance from Aetna in the *individual market*, as those terms are defined by the relevant statute, 42 U.S.C. § 300gg-91, and thus have no standing to assert claims for alleged violations of these statutes.

**Renewal Notice** indicating that [Aetna] **would not renew** Plaintiff's Aetna contract." (Am. Compl. ¶¶ 25-28; emphasis added). The express allegations of Plaintiffs' Amended Complaint concede that this was a non-renewal. Accordingly, Plaintiffs' claims under NY Pub. Health L. §§ 4406-d(2)(a), 4406-d(2)(d), and N.Y. Ins. L. § 4803(b)(1) fail as a matter of law because Aetna's decision "**shall not constitute a termination**." NY Pub. Health L. § 4406-d(3); N.Y. Ins. L. § 4803(c) (emphasis added).

Moreover, even assuming *arguendo* that this was a termination, rendering the notice and appeal provisions operative, Plaintiffs expressly plead that Aetna did in fact comply with these requirements. Plaintiffs plead that on September 25, 2017, Aetna issued a written "Non-Renewal Notice indicating that Defendants would not renew Plaintiff's Aetna contract." (Am. Compl. ¶ 25.) That Notice plainly provides a written explanation of the reason for Aetna's non-renewal: "Aetna is rationalizing its network." (Ex. 3 at 1.)[7] The Notice further states: "**You have the right to appeal our decision**" and sets forth the requirements for filing an appeal of the non-renewal decision. (*Id.*; emphasis in original). Plaintiffs further plead that they filed an appeal which Aetna upheld, and received notice in writing from Aetna that its decision was due to Aetna "rationalizing its network." (Am. Compl. ¶ 26.)

Therefore, Plaintiffs' express allegations plainly state that Aetna complied with NY Pub. Health L. §§4406-d(2)(a), 4406-d(2)(d), and N.Y. Ins. L. § 4803(b)(1) because Aetna provided written notice of its reason for issuing the Non-Renewal Notice, provided Plaintiffs with an opportunity to appeal, and communicated the result of that appeal to Plaintiffs in writing. (Am. Compl. ¶¶ 25-26; Ex. 3, at 1.) Accordingly, this Court must dismiss Plaintiffs' claims premised

---

[7] This Court can consider this document in adjudicating Aetna's motion to dismiss because Plaintiffs expressly reference and rely upon this document in the Amended Complaint, (Am. Compl. ¶¶ 25, 86-89). *Pehlivanian*, 153 F. Supp. 3d at 642 (Ramos, J.) This Notice was also attached to Plaintiffs' original Complaint as Exhibit D. (*See* ECF No.1-2, at Ex. D.)

upon a violation of NY Pub. Health L. §§4406-d(2)(a), 4406-d(2)(d), and N.Y. Ins. L. § 4803(b)(1).

Likewise, Plaintiffs' express allegations in the Amended Complaint are fatal to any claim pursuant to NY Pub. Health L. §§4406-d(5).  This statute provides that a health care plan shall not refuse to renew a contract solely because the health care provider has: "(a) advocated on behalf of an enrollee; (b) filed a complaint against the health care plan; (c) appealed a decision of the health care plan; (d) provided information or filed a report pursuant to section forty-four hundred six-c of this article; or (e) requested a hearing or review pursuant to this section." However, Plaintiffs allege that Aetna issued the Non-Renewal Notice "**for reasons that remain unknown**."  (Am. Compl. ¶ 30; emphasis added).  Plaintiffs speculate that the reasons for the Non-Renewal was "the fact that the Plaintiffs advocated for use of the Mobile Clinics," (*id.* ¶ 88), but even assuming *arguendo* that this was the reason the statute does not prohibit a non-renewal because the provider advocated for coverage for a specific medium of providing services generally and not on behalf of any patient. *See* NY Pub. Health L. §§4406-d(5)(a)-(e).  Thus, Plaintiffs' express allegations are also fatal to any claim premised upon a violation of NY Pub. Health L. §§4406-d(5)(a)-(e).

Accordingly, this Court should dismiss Count IX with prejudice.

> **6.    Plaintiffs' Cannot Maintain a Broad Claim for a Violation of NY Ins. L. § 3224-a (Count VIII).**

In Count VIII, Plaintiffs contend that Aetna violated NY Ins. L. § 3224-a because it failed to inform Plaintiffs of the reason it denied $900,000 of claims for services rendered at its "Mobile Clinics" within the statutorily proscribed 30 day period.  (Am. Compl. ¶¶ 81, 83-84.) Notably, the $900,000 of claims that were allegedly denied by Aetna all relate to Plaintiffs' rendering of services at its "Mobile Clinics."  (*Id.* ¶¶ 24, 53.)

However, Plaintiffs allege that on May 4, 2017, Aetna notified Plaintiffs that any claims relating to services provided at the Mobile Clinics would be denied.  (*Id*. ¶ 22; *see also* Ex. 2).[8] Significantly, because of this notice, any claims submitted before this date would be untimely as Plaintiffs did not file their Complaint in New York state court until May 25, 2017.[9] This means that for all timely claims, *Plaintiff was notified prior to ever submitting the claims that such claims would be denied for the reasons stated in the May 4, 2017 notice.*  (Am. Compl. ¶ 22; Ex. 2, at 1.)  Therefore, Plaintiffs' claim that Aetna failed to timely inform them of the reasons for denial fails as a matter of law because Plaintiffs themselves expressly plead that they were in fact informed of the reasons why these claims would be denied before they even submitted them.

Accordingly, this Court should dismiss Count VIII with prejudice.

### 7.     Count X (Violation of 42 U.S.C. § 18116(a)) Fails as a Matter of Law Because Plaintiffs Are Not Members of a Protected Class.

In Count X, Plaintiffs allege that Aetna violated the anti-discrimination provisions of the Affordable Care Act, 42 U.S.C. § 18116(a), and seeks an award of both specific performance and monetary damages of at least $900,000.  (Am. Compl. ¶¶ 91, 100.) However, in order to survive

---

[8] This Court can consider this document in adjudicating Aetna's motion to dismiss because Plaintiffs expressly reference and rely upon this document in the Amended Complaint, (Am. Compl. ¶¶ 22, 80-84). *Pehlivanian*, 153 F. Supp. 3d at 642 (Ramos, J.)  This Notice was also attached to Plaintiffs' original Complaint as Exhibit C.  (*See* ECF No.1-2, at Ex. C.)

[9] Section 11.3 of the parties' Agreement provides: "Statute of Limitations. Notwithstanding section 11.2, **no action**, regardless of form, arising out of or related to this Agreement **may be brought by any party more than twelve (12) months after such cause of action has arisen**." (Ex. 1, at § 11.2; emphasis added).  New York courts enforce agreements concerning the limitations period to raise claims.  *CingleVue Int'l Pty, Ltd. v. eXo Platform NA, LLC*, 2014 U.S. Dist. LEXIS 93634, at *8-9 (N.D.N.Y. July 10, 2014) ("The New York Court of Appeals has enforced contractual limitation periods of one year.  [U]nder New York law [f]ailure to comply with a contractual limitations period will subject the action to dismissal, absent proof that the limitations provision was obtained through fraud, duress, or other wrongdoing." (internal citations and quotations omitted)). Plaintiffs filed this action in New York state court on May 25, 2018, and thus any claims that arose prior to May 25, 2017 – *three weeks after Aetna notified Plaintiffs the reason it would deny all Mobile Clinic claims* – would be time barred.

a motion to dismiss, Plaintiffs "must essentially plead a corresponding civil rights statute predicate in order to make out a valid Section 1557 ACA claim." *Weinreb v. Xerox Bus. Servs., LLC*, 323 F.Supp.3d 501, 521 (S.D.N.Y. Aug. 29, 2018).  But, Plaintiffs have not, and cannot, plead that they are a member of a protected class or that *they* have been discriminated against. Plaintiffs, therefore, have not, and cannot, plead "a corresponding civil rights statute predicate." *Id*.

Accordingly, the Court should dismiss Count X with prejudice.

### 8.   Count XI (Violation of HIPAA) Fails as a Matter of Law Because HIPAA Does Not Contain a Private Right of Action.

In Count XI, Plaintiffs allege that Aetna violated HIPAA due to alleged "unauthorized use of protected health information." (Am. Compl. ¶ 101.)  However, it is well-settled that "claims under HIPAA must be dismissed because there is no private right of action under that statute or the privacy rules." *Rodrigues v. N.Y.C. Mental Health & Hygiene*, 2018 U.S. Dist. LEXIS 60130, at *10 (S.D.N.Y. Apr. 6, 2018); *Bond v. Conn. Bd. of Nursing*, 622 F. App'x 43, 44 (2d Cir. 2015) ("It is doubtful that HIPAA provides a private cause of action at all."); *Mitchell v. Macy's, Inc*., 2018 U.S. Dist. LEXIS 165613, at *16 (S.D.N.Y. Sep. 25, 2018) ("Enforcement of [HIPAA] and its regulations is limited to the Secretary of Health and Human Services." (internal quotations and citations omitted)).

Accordingly, this Court should dismiss Count XI with prejudice.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, Defendant respectfully requests that this Court grant its motion, dismiss Plaintiffs' Amended Complaint with prejudice, and grant such other relief as the Court deems proper.

Respectfully submitted,

**Connell Foley LLP**

*/s/ Patricia A. Lee*
Patricia A. Lee
Elyse S. Tormey
888 Seventh Avenue, 9th Floor
New York, NY 10106
212-307-3700
PLee@connellfoley.com
ESchier@connellfoley.com

**Elliott Greenleaf, P.C.**

*/s/ Mark J. Schwemler*
Mark J. Schwemler
Gregory S. Voshell
Thomas B. Helbig, Jr.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-977-1000
mjs@elliottgreenleaf.com
gsc@elliottgreenleaf.com
tbh@elliottgreenleaf.com

*Counsel for Defendant Aetna Life Insurance Company*

Dated: November 5, 2018

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I caused the foregoing to be filed electronically filed with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon Plaintiff and all counsel of record.

*/s/ Mark J. Schwemler*

Dated: November 5, 2018