**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
PERRY A. FRANKEL, M.D. AND ADVANCED
CARDIOVASCULAR DIAGNOSTICS, PLLC,

                                                                **CASE NO. 18-cv-06378 (ER) (BCM)**

PLAINTIFFS

    -AGAINST-

U.S. HEALTHCARE, INC. d/b/a AETNA
U.S. HEALTHCARE, AETNA, INC. AND
AETNA, INC.,

                         DEFENDANTS
------------------------------------------------------------X

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Perry A. Frankel, M.D. ("Dr. Frankel") and Advanced Cardiovascular Diagnostics,

PLLC, ("ACD") (collectively "Plaintiffs"), submit the following in Opposition to the Motion of

Aetna Life Insurance Company ("Defendant") dismiss Plaintiffs Amended Complaint with

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## THE PARTIES

Dr. Frankel is a New York State licensed physician and is Board Certified in Internal

Medicine and Board Eligible in Cardiology, with medical staff privileges at North Shore

University Hospital in Manhasset, New York; St. Francis Hospital in Port Washington, New

York; and Lenox Hill Hospital in New York, New York. Dr. Frankel is a resident of the State of

New York. Dr. Frankel's medical practice, Advanced Cardiovascular Diagnostics ("ACD"), is a

New York Corporation, that provides state-of-the-art cardiovascular testing and cardiovascular

disease prevention services in both a traditional office setting in Lake Success, New York;

Bronx, New York; Brooklyn, New York, as well as in two (2) fully-equipped mobile medical

offices ("Mobile Clinics"). The Mobile Clinics are used to bring lifesaving medical services out

into the community, at locations which are more convenient for certain patients, and patient groups, to receive needed care. Additionally, the Mobile Clinics allow Members to receive preventative care that improves Members overall health and reduces the need for Members to incur for future costly medical procedures related to strokes, heart attacks, and other serious medical conditions.

On or about April 22, 1998, Dr. Frankel executed a Specialist Physician Agreement Execution Sheet and provider agreement (the "Contract") with Aetna.  (Annexed hereto as **Exhibit "A"** is a copy of the Contract). For over twenty (20) years, Dr. Frankel has provided healthcare services to Aetna Members, pursuant the Contact.  In April 2017, Aetna abruptly stopped paying claims to the Plaintiffs for services provided to Aetna members, despite Aetna's contractual and legal obligation to timely pay such claims. Plaintiffs now have unpaid claims owed by Defendant in excess of $900,000.00.

Thereafter, on September 25, 2017, Defendant issued a retaliatory Non-Renewal Notice indicating that Defendant would not renew Plaintiff's Aetna contract, including non-renewal of Plaintiff's participation in the Medicare networks; wherein, Defendant explained that it was "rationalizing its networks".  On July 31, 2018, Aetna terminated the Contract. Plaintiff believes that Aetna terminated the Contract in whole or in part based upon (1) Defendant's retaliation against Plaintiff for Plaintiffs' patient advocacy; (2) business policies and plans of Aetna that seek to reduce the access of Aetna members to healthcare, which has a significant discriminatory impact on minority Aetna Members; and (3) Aetna's actions were done in furtherance of a strategy by Aetna to reduce competition and control healthcare prices in anticipation of the merger between Aetna and CVS.

## FACTUAL DEVELOPMENTS RELATING TO THE INSTANT ACTION FOLLOWING THE FILING OF THE COMPLAINT

Plaintiff's respectfully request the Court take judicial notice of the factual developments that arose after the filing of the Complaint as they relate to and impact Defendant's decision to terminate the Contract that forms the basis of Plaintiffs' claims.  For purposes of a motion to dismiss, this Court can take judicial notice of related Court orders in other proceedings. *Global Network Communications v. City of New York*. 458 F.3d 150, 157 (2d Cir. 2006).

Several significant events have transpired since the commencement of this action, which further illustrate certain concerns and arguments set forth by the Plaintiffs in this action. First, Defendant is in the process of a merger with CVS Pharmacies[1]. The Aetna-CVS merger (the "Merger") is significant in that the Merger has resulted in documentation and reports that support Plaintiffs' causes of action against the Defendants, in particular Plaintiffs assertions regarding Defendants' failure to properly review and pay insurance claims as well as Plaintiffs' assertions that Defendants improperly terminated the contract.

For instance,  examination of the Merger by the California Department of Insurance, (the "CDOI") resulted in a determination by the CDOI that Defendant has a ***"persisting trend of likely violations relating to Aetna's claims handling procedures and practices"*** and which further found "***numerous alleged violations, including improper representation of pertinent facts and policy provisions to claimants, incorrect denials, unsatisfactory settlements, failure to inform the insured of the right to independent medical review, and failure to conduct fair investigation of claims. The exam also found violations related to claims handling, including***

---

[1] Completion of the Aetna-CVS merger has been temporarily stayed by the Hon. Richard J. Leon, USDJ. *See Dept. of Justice v. CVS Health Corp. and Aetna, Inc.,* 18-cv-02340-RJL, Docket # 27 (D.D.C. December 4, 2018). (Annexed hereto as **Exhibit "B"** is a copy of said. copy of said Order).

*but not limited to failure to conduct a thorough investigation, and failure to provide clear*

*reasons for denial of claims."* [2]

Furthermore, a congressional hearing on the Merger resulted in sworn testimony that the

Merger provides incentive for Aetna to *".... now find it to its advantage to steer as many Aetna*

*policyholders as it can into using CVS to fill their prescriptions. Or to steer them into using*

*CVS Minute Clinics for more of their medical needs, and away from their own primary care*

*physicians – even though the primary care physicians have established relationships with the*

*policyholders and can provide better continuity of care*."[3] Similar statements were made in a

letter from the American Medical Association (the "<u>AMA</u>") to the Antitrust Division of the

United States Department of Justice, the AMA Letter provides in part "there are customer

foreclosure effects in the specialty pharmacy market where severely ill Aetna patients are likely

to be steered to CVS's specialty pharmacy rather than to pharmacies located in hospitals or

physician practices staffed by the patients' treating specialist whose clinical supervision and

judgments are needed."[4]

---

[2] See, Letter of California Insurance Commissioner Dave Jones to Attorney General Jeff Sessions dated August 1, 2018, containing detailed findings of fact and law regarding the results of the CDOI evaluation of the Effect of the Aetna-CVS merger on competition in the California health insurance market and on California consumers, p. 13-14; http://www.insurance.ca.gov/0400-news/0100-press-releases/2018/upload/nr085LtrJonestoUSAGSessionsreCVS-AetnaMerger.pdf (Annexed hereto as **Exhibit "C"** is a copy of said letter).

[3] United States. Cong. House. Subcommittee on Regulatory Reform, Commercial and Antitrust Law House Committee on the Judiciary. *Competition in the Pharmaceutical Supply Chain: The Proposed Merger of CVS Health and Aetna. Feb. 27, 2018* (statement of George Slover, Consumers Union) (the "<u>Slover Statement</u>"). (".... what are loosely described as efficiencies are revealed, on closer inspection, to involve reducing competition, in ways that harm consumer choice and harm quality. For example, CVS-Aetna might decide to tell Aetna policyholders that their coverage only applies if they go to a CVS Minute Clinic, not to a perhaps better, and equally or more affordable, and more conveniently located, walk-in clinic run by someone else. Or to tell them that they get full coverage only for the Minute Clinic, because it's "in-network," with in-network now meaning it has to be in- house. Or to tell independent clinics who want to be in the CVS network that they must kick back profits, or must cut corners on quality of service, in order to meet new "guidelines.") (Annexed hereto as **Exhibit "D"** is a copy of the Slover Statement).

[4] See, Letter of James L. Madara, M.D. of the American Medical Association (the "<u>AMA</u>") dated August 7, 2018, (the "<u>Madara Letter</u>") regarding concerns of the AMA regarding the proposed merger of Aetna and CVS. (Annexed hereto as **Exhibit "E"** is a copy of the Madara Letter, enclosures excluded).

**INTRODUCTION**

Plaintiffs seek recovery from the Defendant based on Defendant's breach of the Contract that resulted in Defendant's failure to pay Plaintiff for claims in excess of $900,000.00, damages incurred by Plaintiffs as a result of certain violations of law by Aetna.  Defendant's main argument is that Plaintiffs' causes of action are preempted by ERISA and that Plaintiffs' Complaint must be dismissed.

Notwithstanding Defendants arguments, the causes of action set forth in the Complaint arise out of Defendant's breach of the Contract and breaches of employee benefit plans that are independent and distinct claims that fail outside the scope of ERISA.  Additionally, Defendant conspicuously and openly admits in its Motion to Dismiss that not all unpaid claims are related to services provided to Aetna Members insured under an employee health insurance plan; therefore, even assuming Defendant's arguments are true, it is clear, that at least some of the unpaid claims are not governed by Aetna[5].

Since the filing of this action there have been certain developments arising outside of this action, that demonstrate the likelihood that Defendants sudden refusal to pay claims and Defendants sudden termination of the Contract without explanation, are part of a general business practice of Aetna to reduce patient access to healthcare, reduce marketplace competition, to control prices, and to take retaliatory actions against providers who advocate for both their own rights and those of their Aetna member patients.

In fact, Aetna is in the process of completing a merger with CVS, as part of the anticipated merger, Aetna is seeking to greatly reduce or eliminate in network providers,

---

[5] *See, paragraph 5 of Affidavit of John Privett in Support of Defendants' Motion to Dismiss ("Attached as Ex. 4 to Defendants' Motion to Dismiss)* Defendants' Affidavit states in part "**I have confirmed that *many of the claims* for which Plaintiffs' contend they were not paid concern individuals whose health insurance is provided pursuant to non-governmental, self-funded employee benefit plans, administered by Aetna**."

including Dr. Frankel, with the goal of requiring Aetna Members to seek treatment and care from

CVS clinics. By greatly reducing or eliminating competition from medical providers, and

essentially forcing Aetna members to seek care from CVS clinics, Aetna-CVS can control prices,

set restrictions on services and medications provided to Aetna members, and can essentially

dictate the medical practice by any remaining in network Aetna providers.

Defendant's Motion to Dismiss should be denied as pre-mature and Plaintiffs should be

afforded the opportunity to proceed with discovery which will enable Plaintiffs to demonstrate

that Defendant's refusal to pay claims and Defendant's efforts to shrink provider networks, were

part of a larger plan by the Defendants to reduce competition and control prices.  Such actions

and efforts by the Defendant are improper and support Plaintiffs' claims for the following (1)

breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) violation of

New York Unfair Trade Practices Act; (4) unjust enrichment; (5) violation of New York Public

Health Law § 4406-(d)(2)(a) and 4406-(d)(2)(d); and (6) violation of New York Insurance Law §

4803(b)(1). Furthermore, Plaintiffs request leave to amend the Complaint for purposes of adding

a cause of action against the Defendants for violation of Section 4 of the Clayton Act (15 U.S.C.

§ 15) pursuant to Federal Rule of Civil Procedure 15(a)(2) so that Plaintiffs may incorporate a

cause of action under Section 4 of the Clayton Act (15 U.S.C. § 15). Federal Rule of Civil

Procedure 15(a)(2) states that "[A] party may amend its pleading only with the opposing party's

written consent or the court's leave. The court should freely give leave when justice so requires."

Rule 15(a)(2).

## **LEGAL STANDARD**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct.

2197, 167 L. Ed. 2d 1081 (2007) (*per curiam*); *See also Nielsen v. Rabin*, 746 F .3d 58, 62 (2d

Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations

. . ." (internal quotation marks omitted)); *Aegis Ins. Servs. Inc. v. 7 World Trade Co.*, 737 F .3d

166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all

factual allegations in the complaint as true . . ." (alterations and internal quotation marks [*12]

omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s]

all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp.

2d 302, 304 n.1 (S.D.N.Y. 2014) (*citing Koch v. Christie's Int.' l PLC*, 699 F .3d 141, 145 (2d

Cir. 2012)).

To survive a motion to dismiss under FRCP 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The court must accept all factual

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

*Id*., 550 U.S. at 555-56; *Freedom Holdings, Inc. v. Spitzer*, 363 F.3d 149, 151 (2d Cir. 2004).

## I.   DEFENDANTS CONTENTION THAT COUNTS I-VIII ARE PREEMPTED BY ERISA ARE WITHOUT MERIT

Defendant claims that Claims I-VIII of Plaintiffs' Amended Complaint are preempted by

ERISA and must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)[6].  Defendant's

motion to dismiss Plaintiffs' Amended Complaint is pre-mature and does not justify dismissal.

Defendant's argument that dismissal under 12(b)(6) is appropriate is facially deficient, as

Defendant failed to demonstrate that all, or even any, unpaid claims are governed by ERISA, and

---

[6] Counts I-VIII are as follows: (1) Breach of Implied Covenant of Good Faith and Fair Dealing; (2) Violation of the New York Unfair Trade Practices Act ("NY GBL 349"); (3) Breach of Contract; (4) Violation of the Patient Protection and Affordable Care Act, 42 U.S.C. § 80001, et seq.; (5) Promissory Estoppel; (6) Unjust Enrichment; (7) Tortious Interference with a Contract; and (8) Violation of New York Insurance Law § 3224-a.

in fact Defendant admits in its Motion to Dismiss that not all unpaid claims are governed by ERISA. *See, paragraph 5 of Affidavit of John Privett, attached as Defendant's Ex. 4* "I have confirmed that ***many of the claims*** for which Plaintiffs' contend they were not paid concern individuals whose health insurance is provided pursuant to non-governmental, self-funded employee benefit plans, administered by Aetna."  "When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Phx. Ancient Art, S.A. v. J. Paul Getty Tr.,* 2018 U.S. Dist. LEXIS 53270, at *14-15 (S.D.N.Y. Mar. 29, 2018) (Ramos, J.)

Additionally, in making a determination as to whether to grant a motion to dismiss the Court must only determine whether Plaintiffs stated a claim for relief that is plausible on its face and is obligated to draw all reasonable inferences in Plaintiffs' favor. *See*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A motion to dismiss must be denied where more factual development is required in order to determine a claim. See, *Lowell v. Lyft, Inc.,* 2018 U.S. Dist. LEXIS 202495 *26 (S.D.N.Y., Nov. 29, 2018).  Therefore, even if the Court were to accept the statement in Defendant's Motion to Dismiss as true, Defendant's argument fails because Defendant's state that **many of the claims upon which Plaintiffs bring this action allegedly arise from employee insurance plans**, necessarily means that by Defendants' own admission *some* of the claims at issue do not arise under self-funded employee health benefits plans governed by ERISA and thus would not be pre-empted.  [Emphasis added].

Furthermore, Defendant's breach of contract and other violations of law are based upon an overall business plan and practice of Aetna and are not specific to individual review of the claims submitted by the Plaintiffs that remain unpaid.  To the extent Defendant's blanket claim denials are part of its general business practice, such practices violate the Contract, independent

8

of any obligations Defendant might have under employee insurance plans. Consequently,

Plaintiff should be permitted to with discovery as discovery will result in the disclosure as to

what extent, if any, Plaintiffs' claims are pre-empted by ERISA.  Accordingly, Defendant's

request for Dismissal is pre-mature.

II.      **IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

New York State law recognizes an implied covenant of good faith and fair dealing in

every contract." *Mbody Minimally Invasive Surgery, P.C. v. Empire Health Choice*, 2014 U.S.

Dist. LEXIS * 15 *citing Cross & Cross Properties Ltd. v. Everett Allied Co.,* 886 F.2d 497, 501-

02 (2d Cir. 1989). "The covenant embraces a pledge that neither party shall do anything which

will have the effect of destroying or injuring the right of the other party to receive the fruits of

the contract." *Id. quoting County of Orange v. Travelers Indem. Co.,* No. 13-cv-06790, 2014

U.S. Dist. LEXIS 66451, 2014 WL 1998240 (S.D.N.Y. May 14, 2014). Here the basis of

Plaintiffs' cause of action for breach of good faith and fair dealing is distinct from the basis of

Plaintiffs' other breach of contract claims and therefore is sufficient to withstand a request for

dismissal.

Under the circumstances surrounding this case, Plaintiffs allege not only that Defendant

breached the Contract by failing to pay claims but also because Defendant's actions were

retaliatory and were done with the improper purposes of reducing competition, controlling

medical decisions, controlling pricing, and restricting access to healthcare.   Therefore,

Defendant's argument that Plaintiffs' cause of action for implied covenant of good faith and fair

dealing is without merit and should be denied.

### III. PLAINTIFFS CLAIMS UNDER NY GBL 349, PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT HAVE BEEN PROPERLY PLED

Similar to Plaintiffs' claim for breach of implied covenant of good faith and fair dealing, Plaintiffs' claims under NY GBL 349, promissory estoppel, and unjust enrichment are not preempted by ERISA. *See, McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna, Inc.*, 857 F. 3d 141, 149-150 (2nd Cir. 2017) ("state-law claim not preempted because "the terms of plaintiffs' ERISA plans are irrelevant to their claims.") *citing Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F. 3d. 594, 598 (7th Cir. 2008) ("alleged misrepresentations made . . . in response to [provider's] inquiry" was not an action "to recover benefits due to [a patient] under the terms of his plan, to enforce [a patient's] rights under the terms of the plan, or to clarify [a patient's] rights to future benefits under the terms of the plan.") Even if the Court were to determine that ERISA applies, such a finding would not foreclose Plaintiffs' cause of action for promissory estoppel and unjust enrichment. "In the ERISA context, promissory estoppel may be used to redress injury that arises from the denial of ERISA benefits [and] [i]n such cases, 'state law does not control. A plaintiff must satisfy four elements to succeed on a promissory-estoppel claim: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Long Island Neuroscience Specialists v. Fringe Benefit Funds,* 2014 U.S. Dist. LEXIS at * 16 *quoting Weinreb v. Hospital for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005).

Plaintiffs' Complaint satisfies each of the four elements of promissory estoppel as well as the requirement of extraordinary circumstances (1) Defendant promised to pay the Plaintiffs agreed upon amounts for services provided by Plaintiffs to Aetna Members, and in fact based upon this promise, Dr. Frankel provided services to Aetna Members for over twenty (20) years.

10

Likewise, the Contract between the parties was consistently renewed over the twenty (20) plus year period based upon the promise and understanding that the Contract would not be terminated without explanation or cause; (2) Plaintiffs provided healthcare services to Aetna Members  and expended substantial funds in terms of staffing and equipment in reliance on Defendants' promise to pay for services provided and in reliance on Defendant's promise that the Contract would not be terminated without explanation or cause; (3) Plaintiffs have suffered damages by way of significant overdue and unpaid bills owed by the Defendants for services provided to Aetna Members in reliance on Defendants' promise to pay.

Likewise, Defendant's termination of its Contract with Dr. Frankel without explanation or cause has damaged the Plaintiffs by way of reputation, uncertainty with regard to future business, the loss of patients, and the loss of significant contract opportunities with employers using Aetna plans; and (4) an injustice will occur unless remedied by the Court, as the Defendant has payments for health care plans from customers who paid to be covered under Aetna plans, Plaintiffs provided over $900,000.00 worth of services to those Aetna customers without receiving payment from Aetna.

Furthermore, extraordinary circumstances exist here because, (1) if allowed to stand, Defendant's actions would result in other providers fearing retaliation for patient advocacy; (2) Defendant's actions will have effectively punished Dr. Frankel for his patient advocacy; (3) Plaintiffs intend to demonstrate through discovery and at trial that Defendant's actions are part a larger strategy by the Defendant's to restrict patient access to medical care; and (4) Defendant's actions have resulted in, and will continue to result in, harm to Aetna patients and to a disproportionate degree Aetna Members of minority populations.

11

Accordingly, the Complaint satisfies each of the four elements of promissory estoppel; therefore, Defendant's argument that Plaintiff's cause of action for promissory estoppel must be denied.

## IV.    BREACH OF CONTRACT CLAIM

Plaintiffs cause of action for breach of contract arises from breach of the Provider Contract, and from Defendants failure to pay claims. Defendant sudden blanket denial of claims for services provided to Aetna members without any explanation and Defendant's termination of the Provider Contract, were done as part of Defendant's overall business strategy of (A) reducing Aetna member patient access to healthcare providers; (2) to greatly reduce or eliminate in network providers, including Dr. Frankel and ACD; (3) to reduce competition and control pricing; and (4) as an attempt to dictate the medical practices of the Plaintiffs and other in network providers by way of intimidation and retaliation. Defendants actions constitute a breach of the Provider Contract independent of any breach by the Defendants of Defendants obligations as payor, insurer, and/or administrator of certain Aetna member employee insurance plans. Furthermore, Defendant has acknowledged that at least some of the unpaid claims were for claims provided to Aetna Members who were not participants in an employee insurance plan; as such Defendant cannot argue that all of Plaintiffs claims for non-payment are pre-empted by ERISA.

To the extent the Court determines that ERISA governs the claims upon which Plaintiffs' causes of action are based; Plaintiffs' Amended Complaint sufficient alleges causes of action against the Defendant upon which relief may be granted.  As acknowledged by Defendant in their removal motion, Aetna members have provided Dr. Frankel with assignment of benefits and therefore is entitled to bring claims as a beneficiary under the plan. "[I]t is well-established

in this Circuit that 'the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA." *Mbody Minimally Invasive Surgery, P.C. v. Empire Health Choice*, 2014 U.S. Dist. LEXIS 114012, 2014 WL 4058321 (S.D.N.Y. Aug. 15, 2014).

"Under ERISA, courts review a denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Aitken v. Aetna Life Ins. Co.,* 2018 U.S. Dist. LEXIS 164008 at * 29 (S.D.N.Y. Sept. 25, 2018) *quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Here however, Aetna issued blanket denial of claims without properly reviewing the claims and without taking into consideration the supporting documentation and information. Aetna's blanket denial of claims was issued without regard to the terms or review process of the individual plans and without complying with any set claims determination process. Aetna had an obligation to pay or approve for payment the claims submitted by Plaintiffs for services provided to Aetna members. For the reasons set forth above, Defendant's Motion to Dismiss is premature and Plaintiffs should be permitted to proceed with discovery.

V.     **TORTIOUS INTERFERENCE WITH A CONTRACT**

Aetna was not originally a competitor of the Plaintiffs, however, once Aetna explored the possibility of a merger with CVS or other similar companies, Aetna essentially became a competitor of the Plaintiffs.  With the pending proposed merger of Aetna and CVS, provides motive for Aetna to refuse to pay claims to Dr. Frankel and other providers, as a means of putting Aetna providers out of business or at least using the threat of retaliation for the purpose of trying to dictate the medical decisions of Aetna providers. It appears clear, that Aetna's goal in interfering with the terms of the Contract and improperly terminating the Contract, was to restrict

access to providers with the goal of ultimately having Aetna members seen at CVS minute

clinics, instead of by independent healthcare providers. The result is that after merger Aetna-

CVS would be one company serving as both the insurer and the healthcare provider[7].

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss should be denied as

premature and the parties should proceed with discovery.

Dated: White Plains, New York
        December 5, 2018

Respectfully submitted,


By:   _____
      Todd S. Cushner, Esq.
      Cushner & Associates, P.C.
      *Attorneys for Plaintiff*
      399 Knollwood Road, Suite 205
      White Plains, New York 10603
      (914) 600-5502 / (914) 600-5544
      todd@cushnerlegal.com

---

[7] A business practice known as disintermediation. *See Steward Health Care Sys, LLC v. Blue Cross & Blue Shield of R.I.,* 311 F. Supp. 3d 468, 510 (Dist. R.I. 2018)