UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PERRY A. FRANKEL, M.D. and ADVANCED CARDIOVASCULAR DIAGNOSTICS, PLLC,

Plaintiffs,

-against-

U.S. HEALTHCARE, INC., *d/b/a* AETNA U.S. HEALTHCARE, INC., *d/b/a* AETNA HEALTH, INC., and AETNA, INC., *d/b/a* AETNA,

Defendants.

**OPINION AND ORDER**
18 Civ. 06378 (ER)

Ramos, D.J.:

Perry A. Frankel, M.D. and Advanced Cardiovascular Diagnostics, PLLC ("Plaintiffs"), bring this action against U.S. Healthcare, Inc., *d/b/a* Aetna U.S. Healthcare, Inc., *d/b/a* Aetna Health, Inc. and Aetna, Inc., *d/b/a* Aetna ("Defendants" or "Aetna"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, tortious interference with a contract, and various violations of New York State and federal law, including the Patient Protection and Affordable Care Act (the "ACA"), 42 U.S.C. § 80001 *et seq.*, and the Health Insurance Portability and Accountability Act's ("HIPAA") Privacy Rule, 45 C.F.R. § 164.502.

Before the Court is Defendants' motion to dismiss all claims, and Plaintiffs' motion to amend their complaint. Doc. 28; Doc. 32. For the reasons set forth below, this Court GRANTS in part and DENIES in part Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and DENIES Plaintiffs' motion to amend the complaint under Federal Rule of Civil Procedure 15(a)(2).

## I. BACKGROUND

### A. Plaintiffs' Complaint

Perry A. Frankel, a New York State-licensed physician, entered into a Specialist Physician Agreement (the "Agreement") with Aetna in April 1998. Compl. ¶ 7. Under the terms of the Agreement, Dr. Frankel was to provide covered services to Aetna plan enrollees, members and beneficiaries ("Members") at a mutually agreed upon contractual rate. *Id.* ¶ 9. Dr. Frankel and his practice, Advanced Cardiovascular Diagnostic, provide cardiovascular testing and prevention services at both traditional settings throughout the State and in two "fully-equipped mobile medical offices" ("Mobile Clinics"). *Id.* ¶ 3. Plaintiffs use the Mobile Clinics to reach Members who would otherwise not have access to cardiovascular care, including union workers and employees of government agencies, churches, and charitable organizations. *Id.* ¶¶ 10, 12-15. Plaintiffs also use the Mobile Clinics to reach "Members in underserved urban populations in New York City." *Id.* ¶ 13.

In 2017, Defendants took two actions that prompted this case: first, they adopted a new policy of no longer covering services provided at the Mobile Clinics; then, they exercised their right of non-renewal to terminate their Agreement with Plaintiffs. On May 4, 2017, Defendants first sent Plaintiffs an e-mail alerting them that they would no longer be covering services provided at the Mobile Clinics. *Id.* ¶ 22. Plaintiffs responded to Defendants' e-mail on June 6, 2017, disputing the decision. *Id.* ¶ 23. On June 19, 2017, Defendants began a pre-payment audit review for claims submitted for services rendered at the Mobile Units and halted payment for claims totaling over $900,000. *Id.* ¶ 24. On September 25, 2017, Defendants sent Plaintiffs a notice alerting them that they would not be renewing their contract the following April. *Id.* ¶ 25. The notice indicated that this decision was due to Aetna "rationalizing its network." Ex. D,

Letter from Terry Golash, M.D., Senior Medical Director, Metro New York, to Dr. Perry Frankel (Sept. 25, 2017). Plaintiffs appealed the decision in February 2018. The appeal was unsuccessful, and Defendants again gave the same reason for non-renewal. Compl. ¶ 26. Plaintiffs brought suit shortly thereafter.

### B. The Agreement

According to the Agreement, "Covered Services" are "[t]hose Medically Necessary Services which a Member is entitled to receive under the terms and conditions of a Plan." Ex. A, Specialist Physician Agreement § 12.4. "[Aetna] . . . shall have final authority to determine whether any services provided by Provider were Covered Services and to adjust or deny payments for services rendered by Provider to Members in accordance with the results of such determinations." *Id.* § 1.1.

With regards to the parties' relationship, the Agreement establishes in relevant part that Providers are considered independent contractors and that Aetna's "medical management procedures, protocols, and policies do not dictate or control Provider's clinical decisions with respect to the medical care or treatment of Members." *Id.* § 9.1. Additionally, Providers must make records available to Aetna upon request. *Id.* §§ 6.3-6.4.

The Agreement may be terminated in several ways, including by non-renewal "upon any anniversary of the Effective Date, provided that the party desiring not to renew this Agreement provides at least sixty (60) days prior written notice of such non-renewal to the other party." *Id.* § 7.2. The Agreement is governed by New York Law and imposes a statute of limitations of twelve months for causes of action "regardless of form, arising out of or related to th[e] Agreement." *Id.* § 11.3.

## C. Procedural History

Plaintiffs first filed suit against Defendants in New York Supreme Court on May 25, 2018, asserting nine causes of action. Defendants removed the case to federal court in July 2018 on the grounds that the complaint was completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and because some of Plaintiffs' allegations arose under federal law, namely the ACA. The motion was unopposed. On August 21, 2018, Plaintiffs amended their complaint, adding two new causes of action. The eleven causes of action asserted in the current complaint are as follows:

- Count I: Breach of the implied covenant of good faith and fair dealing
- Count II: Violation of New York General Business Law § 349
- Count III: Breach of contract
- Count IV: Violation of the ACA and New York Public Health Law § 4406(1)
- Count V: Promissory estoppel
- Count VI: Unjust enrichment
- Count VII: Tortious interference with contract
- Count VIII: Violation of New York Insurance Law § 3224-a
- Count IX: Violation of New York Public Health Law §§ 4406-d and New York Insurance Law § 4803(b)(1)
- Count X: Violation of Title VI, as incorporated by the ACA
- Count XI: Violation of the Health Insurance Portability and Accountability Act (HIPAA)

On November 5, 2018, Defendants filed the instant motion to dismiss Plaintiffs' complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 28. In response, Plaintiffs oppose some but not all of these arguments[1] and request permission to amend their complaint for a second time under Federal Rule of Civil Procedure 15(a)(2). Doc. 32 at 6.

---

[1] Specifically, Plaintiffs do not contest Defendants' non-ERISA arguments with regards to Counts II, IV, VI, VIII, IX, X, and XI and therefore concede that these counts fail. *See In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (arguments not addressed in opposition are conceded).

## II. DEFENDANTS' MOTION TO DISMISS

### A. LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## B. DISCUSSION

Defendants first argue that Counts I-VIII of Plaintiffs' complaint should be dismissed because they are expressly preempted by ERISA. In the alternative, they argue that these claims, as well as the remaining three claims, should also be dismissed because they fail as a matter of law. These arguments are addressed in turn.

### 1. ERISA Preemption

ERISA expressly preempts state law claims that "relate to" employee benefit plans. *See* 29 U.S.C. § 1144(a). "ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well." *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 571 (S.D.N.Y. 2016). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (internal citation and quotations omitted). With regards to statutory claims, "ERISA preempts those that 'provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.'" *Id.* (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)). With regards to state common law claims, "ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)).

Defendants maintain that Counts I-VIII are necessarily "related to" Aetna health benefit plans, and therefore preempted by ERISA, because the claims stem from a disagreement over the term "Covered Services," which is defined by reference to a member's health benefit plan. Doc. 29 at 5-10. In response, Plaintiffs maintain that some of the claims at issue may not arise under ERISA-covered plans and would therefore not be preempted. Doc. 32 at 7-9.

While it may be true that claims related to services rendered under ERISA-covered employee benefit plans are expressly preempted, it is not obvious on the face of the complaint that all claims relate to services rendered under covered plans. For example, Plaintiffs allege that the Members they serve are "employed by, unions, government agencies, churches, and charitable organizations." Compl. ¶ 10. Yet governmental plans and some church plans are excluded from ERISA. 29 U.S.C. §§ 1002(32); (33)(A)-(D); 1003(b). Without more information about the claims at issue, the Court cannot determine whether all the relevant Members' plans, namely those belonging to Members employed by government agencies or churches, are governed by ERISA.

While Defendants assert that "*many* of the claims for which Plaintiffs contend they were not paid concern individuals whose health insurance is provided pursuant to non-governmental, self-funded employee benefit plans[] administered by Aetna," that representation—which the Court may not consider at this juncture in any event—does not necessarily clear up the matter. Doc. 30, Ex. 4, Affidavit of John Privet ¶¶ 4-5 (emphasis added). Defendants emphasize that the distinction intended by this statement is not between ERISA and non-ERISA plans, but rather between self-funded and fully funded plans. *See* Doc. 33 at 2-3 n.3. Although the Court appreciates the distinction between self-funded and fully funded plans and its importance to whether claims fit into one of the exceptions to ERISA preemption, it remains unclear whether

7

those claims—however few—that do not concern Members with self-funded employee benefit plans relate to plans governed by ERISA at all.

Therefore, the Court finds that the Complaint, read in the light most favorable to Plaintiffs, alleges sufficient facts to overcome Defendants' 12(b)(6) motion to dismiss Counts I-VIII as expressly preempted by ERISA.

### 2. Alternative Arguments

In the alternative, Defendants argue that all of Plaintiffs' claims except Count III should be dismissed because they fail as a matter of law. Plaintiffs only contest Defendants arguments with respect to Counts I, V, and VII. The Court considers these in turn.

#### a. Count I – Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Count I must be dismissed as duplicative of the breach of contract claim (Count III) because it is rooted in the same conduct and seeks the same damages. Doc. 29 at 10-12. In response, Plaintiffs argue that this claim is unique because it alleges, in addition to breach of contract, that "Defendant's actions were retaliatory and were done with the improper purposes of reducing competition, controlling medical decisions, controlling pricing, and restricting access to health care." Doc. 32 at 9. The Court agrees with Defendants.

"The covenant of good faith and fair dealing 'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Obex Sec., LLC v. Healthzone Ltd.*, No. 10 Civ. 6876 (SAS), 2011 WL 710608, at *2 (S.D.N.Y. Feb. 28, 2011) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002)). But where "parties to an express contract are bound by an implied duty of good faith . . . breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir.

8

2002) (internal citations and quotations omitted). Therefore, "[a] claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." *Id.* (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.").

Plaintiffs' claim for breach of the covenant of good faith and fair dealing is based on the same conduct that gives rise to their breach of contract claim: Defendants' alleged failure to pay for Covered Services, Defendants' decision to refuse payment for services rendered at the Mobile Clinics, and Defendants' decision not to renew the contract. The two causes of action also request the same damages: $900,000. Plaintiffs seemingly acknowledge that this cause of action is rooted in the Agreement, alleging that "Defendant's actions have been carried out in bad faith and *in direct violation of the Contract*." Compl. ¶ 44 (emphasis added). Plaintiffs' only means of distinguishing these two causes of action is alleging that Defendants intended to retaliate against Plaintiffs and had the ultimate purpose of "reduc[ing] Member access to Covered Services," injuries that are purportedly not covered by the Agreement. *Id*. ¶ 47. These allegations are conclusory at best. Plaintiffs have failed to plead sufficient facts to establish that Defendants' actions were retaliatory or that they were aimed at reducing access to Covered Services writ large.

Therefore, Count I is duplicative of the breach of contract claim and must be dismissed.

### b. Count V – Promissory Estoppel

Plaintiffs allege that Defendants are liable for promissory estoppel because they made a "contractual promise" to pay for services, Plaintiffs relied on this promise to their detriment, and Defendants then broke said promise, incurring damages in excess of $900,000. Compl. ¶¶ 61-66. Defendants argue that these allegations are duplicative of the breach of contract claim. Defendants are correct.

"[P]romissory estoppel is a narrow doctrine designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement—for example, the Statute of Frauds or a failure of consideration." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F.Supp.2d 486, 516 (S.D.N.Y.2013) (internal citations and quotations omitted). If a valid and enforceable contract exists, "a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." *Underdog Trucking, LLC, Reggie Anders v. Verizon Servs. Corp.*, 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010).

Here, there is no alleged issue with contract formation, and Plaintiffs do not plead "a duty independent from any arising out of the contract." *Id.* Instead, the claim is explicitly predicated on a breach of "Defendant's contractual promise." Compl. ¶ 62. Therefore, Count V is duplicative of Plaintiff's breach of contract claim and must be dismissed.

### c. Count VII – Tortious Interference

To plead tortious interference with a contract, Plaintiffs must allege "the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Plaintiffs allege that Defendants committed tortious

interference because Plaintiffs had implied contracts with the Members they served, Defendants knew of those relationships, and Defendants' Non-Renewal Notice improperly interfered with those implied contracts, resulting in damages.  Compl. ¶¶ 72-78.  In response, Defendants argue that this claim fails for three reasons:  (1) the claim is merely an attempt to turn a breach of contract claim into a tort; (2) its actions were not improper under the terms of the Agreement; and (3) to the extent an implied contract existed between Plaintiffs and Members, this was an at-will contract and therefore not properly the subject of a tortious interference claim.  Doc. 29 at 15-17.  The Court agrees with Defendants on all counts.

First, the Court finds that Plaintiffs' claim for tortious interference is duplicative of the breach of contract claim.  Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 471 (S.D.N.Y. 2016) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co*., 516 N.E.2d 190, 193 (N.Y. 1987)).  This legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract."  *Clark–Fitzpatrick*, 516 N.E.2d at 194.  If an independent duty exists, "a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct."  *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

Here, Plaintiffs fail to allege sufficient facts to show that Defendants have breached an independent legal duty beyond that arising from the Agreement.  Instead, they maintain that the behavior leading to the alleged tortious interference stems directly from the allegedly "retaliatory Non-Renewal Notice indicating that Aetna would not renew Plaintiffs' Aetna contract."  Compl. ¶ 77.  "If . . . the basis of a party's claim is a breach of solely contractual obligations, such that

the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische*, 692 F.3d at 58.

Second, on the face of the complaint, Plaintiffs have not alleged sufficient facts to show that Defendants' non-renewal was an "intentional and improper procuring of a breach." Section 7.2 of the Specialist Physician Agreement, attached as Exhibit A to Plaintiffs' original complaint, states that the Agreement "may terminate upon any anniversary of the Effective Date, provided that the party desiring not to renew this Agreement provides at least sixty (60) days prior written notice of such non-renewal to the other party." Defendants' Non-Renewal Notice was sent well within this time-frame, almost seven months before the April renewal date. Ex. D, Letter from Terry Golash, M.D., Senior Medical Director, Metro New York, to Dr. Perry Frankel (Sept. 25, 2017). Per the Agreement, there are no other requirements for termination by non-renewal.

Finally, Plaintiffs fail to allege that any of its implied contracts with Members, to the extent these existed, were in fact terminated, or that these contracts could not be terminated at will. *See AIM Int'l Trading, LLC v. Valcucine S.P.A.*, No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) ("A contract terminable at will cannot be the basis for a tortious interference with contract claim.").

For all of these reasons, Count VII must be dismissed.

### III. PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

In its response to Defendants' Motion to Dismiss, Plaintiffs cursorily request leave to once more amend their complaint, this time to add a cause of action under the Clayton Act, 15 U.S.C. § 15. Doc. 32 at 6. Defendants oppose this request because it is procedurally deficient and because it would be futile as currently contemplated. The Court agrees.

A party may not otherwise amend its pleading without either the written consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Motions to amend are ultimately within the discretion of the district courts, *id.* at 182, and they should be handled with a "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Although permissive, the standard for leave to amend "is by no means 'automatic.'" *Billhofer v. Flamel Techs., S.A.*, No. 07 Civ. 9920, 2012 WL 3079186, at *4 (S.D.N.Y. July 30, 2012) (quoting *Klos v. Haskel*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993)). The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Leave to amend may also be denied on the basis of futility "if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *Id.* at 726. The party opposing the amendment has the burden of establishing its futility. *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

Here, Plaintiffs have not provided the Court with a proposed amended complaint, making it difficult for the Court to understand Plaintiffs' new position. *See S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 515 (S.D.N.Y. 2015), *aff'd sub nom. S.M. v. Oxford Health Plans (N.Y.)*, 644 F. App'x 81 (2d Cir. 2016) ("It is well-settled that when seeking leave to amend, the movant must submit 'a complete copy of the proposed amended complaint . . . so that both the Court and the opposing party can understand the exact changes sought.'") (quoting *Akran v. United States,* 997 F.Supp.2d 197, 207 (E.D.N.Y.) *aff'd,* 581 Fed. Appx. 46 (2d Cir.2014)). Instead, Plaintiffs make only a fleeting, two-sentence reference to a proposed amendment that would incorporate claims under the Clayton Act. "Section 4 of the Clayton Act establishes a private right of action for violations of the federal antitrust laws," such as Section 1 of the Sherman Act, and grants that right to "[a]ny person who [is] injured in his business or property by reason of anything forbidden in the antitrust laws." *Gatt Commc'ns, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 75 (2d Cir. 2013) (alterations in original) (quoting 15 U.S.C. § 15). As the complaint currently stands, however, Plaintiffs have not pled any causes of action arising under federal antitrust laws, nor can the Court infer what such causes of action might be. Because of this deficiency, their Clayton Act claim, as currently understood by the Court, would not withstand a 12(b)(6) motion to dismiss.

Therefore, the Court finds that Plaintiffs' proposed amendment would be futile and denies without prejudice Plaintiffs' request to amend the complaint to add a cause of action under Section 4 of the Clayton Act.

IV.     **CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss as to Counts I, II, IV-XI, and DENIES Defendants' motion to dismiss as to Count III. The Court

14

DENIES Plaintiffs' request to amend the complaint as currently contemplated. The parties are directed to appear for a status conference on October 17, 2019 at 10:30 AM. The Clerk of Court is respectfully directed to terminate the motion, Doc. 28.

SO ORDERED.

Dated: September 17, 2019
        New York, New York

Edgardo Ramos, U.S.D.J